2010 ME 113

### STATE of Maine

v.

### Richard M. DALLI.

Supreme Judicial Court of Maine.

Argued: Oct. 5, 2010.

Decided: Nov. 4, 2010.

---

3. We note that the judge who construed the divorce judgment in this case is also the judge who originally authored it.

Sarah A. Churchill, Esq. (orally), Strike, Goodwin & O'Brien, Portland, ME, for Richard Dalli.

Janet T. Mills, Attorney General, Lisa J. Marchese, Asst. Atty. Gen., Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER,* MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Richard M. Dalli appeals from the sentence imposed by the Superior Court (York County, *Fritzsche, J.*) following his guilty plea to an information charging him with manslaughter (Class A), 17–A M.R.S. § 203(1)(A) (2009). The court sentenced Dalli to thirty years' imprisonment, with all but twenty years suspended, and four years of probation. Dalli contends that the court misapplied principle in setting a basic sentence and abused its discretion in arriving at a maximum and final sentence. We granted leave to appeal pursuant to 15 M.R.S. § 2152 (2009) and M.R.App. P. 20, and now affirm the sentence.

## I. BACKGROUND

[¶ 2] On September 2, 2008, Richard Dalli stabbed John Wheeler in the chest with a knife, killing him. Wheeler, a long-time acquaintance of Dalli, was at Dalli's house that night with his girlfriend, who was also a friend of Dalli. All three had been drinking, and there was also evidence that Dalli had taken prescription drugs and that Wheeler had used marijuana.

[¶ 3] At some point in the evening Dalli made a sexual advance toward Wheeler that Wheeler rejected; the parties disagree as to whether this was laughed off as a joke or whether it provided motive for what came later. Some time afterward, Dalli went to the kitchen and returned with a machete; his intent in doing so is uncertain. Wheeler disarmed him, and his girlfriend hid the machete. While the girlfriend and Wheeler were occupied with bandaging a small cut on Wheeler's hand, Dalli returned with a butcher knife, slashed Wheeler several times, and inflicted the fatal stab wound to Wheeler's left chest. Dalli washed off the knife and initially told responding officers that he had stabbed Wheeler in self-defense after Wheeler kicked his door in.

[¶ 4] It is undisputed that at the time of the killing Dalli had a long-standing diagnosis of schizoaffective disorder, aggravated by alcohol dependence and substance abuse. He had a criminal record dating to 1978 involving theft and drug and alcohol offenses.

[¶ 5] Dalli was originally indicted for intentional or knowing murder; he entered pleas of not guilty and not criminally responsible by reason of insanity. His trial on that charge resulted in a mistrial after the jury could not reach a verdict. One month later, Dalli pleaded guilty to an information charging him with manslaughter for recklessly or with criminal negligence causing Wheeler's death. Before the sentencing hearing on December 7, 2009, both Dalli and the State submitted sentencing memoranda. In addition, the State submitted a written victim impact

---

* Although not available at oral argument, Justice Silver participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

statement from Wheeler's mother, and Dalli submitted several letters attesting to his good qualities when he was not abusing drugs or alcohol. After explicitly engaging in the analysis required by 17–A M.R.S. § 1252–C (2009),[1] the court imposed its sentence. This appeal followed.

## II. DISCUSSION

### A. Basic Sentence

[¶ 6] In step one of the three-step process required by section 1252–C, the sentencing court "must determine the basic period of incarceration by examining the crime, the defendant's conduct in committing it, and by looking at other sentences for similar offenses." *State v. Robbins*, 2010 ME 62, ¶ 9, 999 A.2d 936, 938–39 (quotation marks omitted). The Superior Court's basic sentence of twenty-five years in this case is reviewed de novo for misapplication of principle. *Id.* ¶ 9, 999 A.2d at 939. In setting the basic sentence near the top of the permissible range,[2] the sentencing court was "not compelled to expressly invoke a continuum of seriousness, . . . . so long as [its] analys[is] reflect[s] that the defendant's crime was considered to be among the most serious ways in which the crime might be committed . . ." *State v. Hutchinson*, 2009 ME 44,

¶ 42, 969 A.2d 923, 935; *see State v. Reese*, 2010 ME 30, ¶¶ 27–28, 991 A.2d 806, 816–17.

[¶ 7] Because manslaughter necessarily involves a death, the court analyzed the seriousness of Dalli's conduct by examining how likely it was to result in a death in comparison to other ways that manslaughter might be committed. The court reasoned that in purposely stabbing Wheeler deep in the chest with a knife, Dalli acted in a way that created "an extraordinarily high probability of death," and found that his conduct was "a far more serious way of committing manslaughter than the person who drives drunk and in most instances is able to somehow . . . get home safely." The court concluded that Dalli's conduct was "not the absolutely worst way [to commit manslaughter]—or the most certain way, but it's certainly among those."

[¶ 8] The court's analysis does not reflect a misapplication of principle. The court was required to "consider[ ] the particular nature and seriousness of the offense as committed by the offender," 17–A M.R.S. § 1252–C(1), and it quite logically concluded that Dalli's conduct fell near the boundary between the upper limits of manslaughter and intentional or knowing mur-

---

**1.** The statute requires:

In imposing a sentencing alternative pursuant to section 1152 that includes a term of imprisonment relative to murder, a Class A, Class B or Class C crime, in setting the appropriate length of that term as well as any unsuspended portion of that term accompanied by a period of probation, the court shall employ the following 3–step process:

**1.** The court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender.

**2.** The court shall next determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case. These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest.

**3.** The court shall finally determine what portion, if any, of the maximum period of imprisonment should be suspended and, if a suspension order is to be entered, determine the appropriate period of probation to accompany that suspension.

17–A M.R.S. § 1252–C (2009).

**2.** The maximum term of imprisonment for a Class A crime is thirty years. 17–A M.R.S. § 1252(2)(A) (2009).

der. That conclusion justified a basic sentence near the top of the permissible range.

## B. Maximum Sentence

[¶ 9] After setting the basic sentence, the court was required to set a maximum sentence by "consider[ing] whether any mitigating or aggravating factors exist to adjust the [basic] sentence upward or downward." *Robbins*, 2010 ME 62, ¶ 10, 999 A.2d at 939. We review this step for an abuse of discretion. *Id.* Although a sentencing court is required to consider the existence of mitigating factors, it is not compelled to reduce the basic sentence as a result. *Id.* ¶ 12, 999 A.2d at 939.

[¶ 10] Here, the court found both aggravating and mitigating factors in setting the maximum sentence at the statutory maximum of thirty years. 17-A M.R.S. § 1252(2)(A) (2009). In mitigation, the court found that Dalli was genuinely remorseful for Wheeler's death.[3] The court also found three aggravating factors: (1) "absolutely devastating" victim impact demonstrated by Wheeler's mother's letter to the court; (2) Dalli's criminal record; and (3) its finding that given his history of mental health problems and substance abuse, when Dalli decided to drink and take drugs on the night Wheeler was killed, he knew "that something bad could

happen, that things wouldn't go as well if [he] went in that direction."

[¶ 11] Balancing the three aggravating factors against the single mitigating factor, the court concluded that the twenty-five-year basic sentence should be increased to a maximum sentence of thirty years. The court thus did what section 1252–C(2) directed it to do—consider all mitigating and aggravating factors, determine their combined impact on the basic sentence, and then quantify that impact by increasing or decreasing the basic sentence accordingly. That process reveals no abuse of the court's discretion.

## C. Final Sentence

[¶ 12] In determining the final sentence, "the court determines what, if any, portion of the jail sentence should be suspended, and how much probation is appropriate." *Robbins*, 2010 ME 62, ¶ 10, 999 A.2d at 939. We also review this third step for an abuse of discretion. *Id.*

[¶ 13] Here, the court first determined that a four-year period of probation following the unsuspended portion of the sentence was appropriate. *See* 17-A M.R.S. § 1202(1) (2009) ("A person convicted of a Class A crime may be placed on probation for a period not to exceed 4 years . . . ."). It then determined how much of the maximum sentence to suspend in light of the sentencing goals set out in 17-A M.R.S. § 1151 (2009).[4] *See Reese*, 2010 ME 30, ¶ 32, 991 A.2d at 818 (holding that sentenc-

---

**3.** Dalli contends that the court improperly penalized his decision to go to trial on the original murder charge by downgrading its characterization of his remorse for Wheeler's death from a mitigating factor to a neutral one when he later pleaded guilty to manslaughter. It is evident, however, that the court did accept Dalli's remorse as a mitigating factor. When the court referred to the defendant's decision to plead guilty as a "neutral fact," it was commenting on his belated acceptance of responsibility, not his remorse. Addressing Dalli, the court explicitly found

that "you do seem genuinely sorry for all the harm that you've caused and I find that to be really quite sincere."

**4.** The statute provides, in part:

The general purposes of the provisions of this part are:

**1.** To prevent crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety;

ing court appropriately considered relevant factors in light of sentencing goals when determining whether any portion of the sentence should be suspended).

[¶ 14] In arriving at a final sentence of thirty years, all but twenty years suspended, with four years of probation, the court explicitly considered the gravity and seriousness of the offense; concern for public safety; deterrence and rehabilitation; and the potential for Dalli's cooperation in his rehabilitation. Because the court did not disregard the statutory sentencing factors applicable to this case, its final sentence, in which it suspended one-third of the maximum sentence and imposed a lengthy period of probation, does not reflect an abuse of discretion.

The entry is:

Sentence affirmed.

2. To encourage restitution in all cases in which the victim can be compensated and other purposes of sentencing can be appropriately served[;]

3. To minimize correctional experiences which serve to promote further criminality;

4. To give fair warning of the nature of the sentences that may be imposed on the conviction of a crime;

5. To eliminate inequalities in sentences that are unrelated to legitimate criminological goals;

6. To encourage differentiation among offenders with a view to a just individualization of sentences;

7. To promote the development of correctional programs which elicit the cooperation of convicted persons; and

8. To permit sentences that do not diminish the gravity of offenses....

17–A M.R.S. § 1151 (2009).