2011 ME 94

**STATE of Maine**

v.

**Benjamin S. COOK.**

Supreme Judicial Court of Maine.

Argued: May 10, 2011.

Decided: Aug. 25, 2011.

Jeremy Pratt, Esq. (orally), Camden, ME, for Benjamin Cook.

Lindsay D. Jones, Asst. Dist. Atty. (orally), Prosecutorial District Six, Rockland, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Benjamin S. Cook appeals from the sentences imposed by the Superior Court (Knox County, *Hjelm, J.*) following its entry of a judgment of conviction upon Cook's guilty pleas to eleven counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2010); one count of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(B) (2010); one count of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(F) (2010); and one count of unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(E) (2010). The court imposed an aggregate sentence of twelve years' imprisonment, followed by thirty years of supervised release pursuant to 17-A M.R.S. § 1231(1), (1-A), (2)(C) (2010).[1]

[¶ 2] Cook contends that the court abused its discretion (1) in determining a maximum and final sentence pursuant to the sentencing analysis required by 17-A M.R.S. § 1252-C(2), (3) (2010), and (2) in imposing a thirty-year term of supervised release because its separate analysis concerning that component of the sentence was insufficient. We find no error in the court's section 1252-C analysis and therefore affirm the sentences of incarceration imposed. However, today we announce for the first time the analysis a sentencing court is required to undertake before imposing a term of supervised release pursuant to section 1231; accordingly, we vacate the thirty-year term of supervised release

---

1. In the part pertinent to this appeal, the statute provides:

   **§ 1231. Inclusion of period of supervised release after imprisonment**

   **1.** The court, in imposing a sentence of a term of imprisonment that does not include probation for a violation of section 253, may include as part of the sentence a requirement that the defendant be placed on a period of supervised release after imprisonment. The period of supervised release commences on the date the person is released from confinement pursuant to section 1254.

   **1-A.** Notwithstanding subsection 1, the court shall impose as part of the sentence a requirement that a defendant convicted of violating section 253, subsection 1, paragraph C be placed on a period of supervised release after imprisonment. The period of supervised release commences on the date the person is released from confinement pursuant to section 1254 and must include the best available monitoring technology for the duration of the period of supervised release.

   **2.** The authorized period of supervised release is:

   . . . .

   **C.** Life for a person sentenced under section 1252, subsection 4-E.

   . . . .

   **6.** The court may revoke a period of supervised release pursuant to section 1233 for any ground specified in subsection 7. If the court revokes a period of supervised release, the court shall require the person to serve time in prison under the custody of the Department of Corrections. This time in prison may equal all or part of the period of supervised release, without credit for time served on post-release supervision. The remaining portion of the period of supervised release that is not required to be served in prison remains in effect to be served after the person's release and is subject to revocation at a later date.

   17-A M.R.S. § 1231(1)-(2), (6) (2010).

imposed on Cook and remand in order for the court to conduct that analysis.

## I. BACKGROUND

[¶ 3] The essential facts are not in dispute. On February 23, 2010, the State filed a thirty-nine-count information against Cook that included the fourteen counts to which he later entered guilty pleas at a hearing conducted pursuant to M.R.Crim. P. 11; the remaining counts were dismissed. At a sentencing hearing held August 25, 2010, the materials that the Superior Court considered included a presentence investigation report filed by the Department of Corrections; Cook took no issue with the report then, nor does he on appeal.

[¶ 4] The report included the results of interviews conducted with Cook and his two sisters by the Knox County Sheriff's Department as a result of a referral made by the Department of Health and Human Services. In sum, Cook's sister described many instances, beginning in 2004 when she was about age five and Cook about seventeen, of hand to genital contact, including occasions when Cook made her masturbate him and he digitally penetrated her vagina; oral sex that he made her perform on him; and genital to genital contact not involving penetration. The sexual abuse was still ongoing in October 2009.

[¶ 5] Cook's other sister reported that he began sexually abusing her when she was age seven and he was about twelve. She described many instances of oral sex that she performed on him and he on her; digital penetration of her vagina; and gen-

ital to genital contact involving attempted penetration. The abuse continued until she was age fourteen and he was nineteen. At various times when she resisted him or said she would tell someone what he was doing, he threatened to kill her or rape her in her sleep using a knife. The investigator interviewed Cook twice; he admitted to the conduct described by his sisters.

[¶ 6] In addition to the presentence investigation, at sentencing the court considered a presentence evaluation conducted by the State Forensic Service, victim impact statements, several letters supporting Cook, and the remarks of two people who appeared and spoke on his behalf. The court entered judgment and imposed a sentence of twelve years' imprisonment and thirty years of supervised release on Count 2 of the information, a charge of gross sexual assault committed when Cook's sister was age seven and he was nineteen. The court imposed equal or lesser concurrent terms of imprisonment on the remaining counts.

[¶ 7] Cook filed an application to allow an appeal of sentence pursuant to 15 M.R.S. § 2151 (2010) and M.R.App. P. 20. The Sentence Review Panel granted the application, SRP–10–513 (Nov. 19, 2010), and this appeal followed.

## II. DISCUSSION

### A. Section 1252–C Analysis

[¶ 8] We first discuss Cook's contention that the court abused its discretion in conducting steps two and three of the three-step sentencing analysis required by 17–A M.R.S. § 1252–C (2010).[2] *See State v.*

---

**2.** Title 17–A M.R.S. § 1252–C (2010) provides:

In imposing a sentencing alternative pursuant to section 1152 that includes a term of imprisonment relative to murder, a Class A, Class B or Class C crime, in setting the

appropriate length of that term as well as any unsuspended portion of that term accompanied by a period of probation, the court shall employ the following 3–step process:

*Dalli,* 2010 ME 113, ¶¶ 9, 12, 8 A.3d 632, 636 (stating that the second and third steps of the section 1252–C analysis are reviewed for an abuse of discretion).

[¶ 9] In performing the three-step analysis, the court was required to determine a basic, maximum, and final sentence. 17–A M.R.S. § 1252–C. We have held that in a case involving multiple offenses, it is appropriate for a sentencing court "to choose a representative or primary offense for analysis in the first step." *State v. Downs,* 2009 ME 3, ¶ 9, 962 A.2d 950, 953 (quotation marks omitted). Because in such a case the court "is ultimately charged with the overall responsibility to craft a cohesive aggregate sentence for the offender[,]" it "has the discretion to construct an aggregate sentence using a few of the most serious or representative counts . . . as its foundation." *Id.* ¶ 14, 962 A.2d at 954.

[¶ 10] Here, the court selected Count 2 as the foundation for its aggregate sentence because it was the earliest count of gross sexual assault that involved a statutorily-mandated minimum twenty-year basic sentence.[3] In step one of its sentencing analysis the court determined that the basic sentence would be twenty years, a result Cook does not challenge on appeal.

[¶ 11] In step two of its analysis the court arrived at a maximum sentence of twelve years, which was both the State's recommendation and the cap under the terms of Cook's plea agreement. Cook argued for a maximum sentence of six to eight years. The court concluded, however, that "[u]nder [these] circumstances . . . it is inconceivable to me that the maximum period of incarceration would be something less than 12 years."

[¶ 12] Cook contends that the court abused its ·discretion in weighing the aggravating and mitigating factors that it found to exist. Specifically, Cook asserts that the court did not assign a weight to each aggravating and mitigating factor it considered and failed to give the mitigating factors sufficient weight. Contrary to Cook's argument, however, section 1252–C(2) does not require a sentencing court to assign a specific weight to each aggravating or mitigating factor; rather, the court is to "consider all mitigating and aggravating factors, determine their combined impact on the basic sentence, and then quantify that impact by increasing or decreasing the basic sentence accordingly." *Dalli,* 2010 ME 113, ¶ 11, 8 A.3d at 636.

---

1. The court shall first determine a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender.

2. The court shall next determine the maximum period of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case. These sentencing factors include, but are not limited to, the character of the offender and the offender's criminal history, the effect of the offense on the victim and the protection of the public interest.

3. The court shall finally determine what portion, if any, of the maximum period of imprisonment should be suspended

and, if a suspension order is to be entered, determine the appropriate period of probation to accompany that suspension.

3. Title 17–A M.R.S. § 1252(4–E) (2010), enacted by P.L.2005, ch. 673, § 4 (effective Aug. 23, 2006), provides:

If the State pleads and proves that a crime under section 253 was committed against a person who had not yet attained 12 years of age, the court, notwithstanding subsection 2, shall impose a definite term of imprisonment for any term of years. In determining the basic term of imprisonment as the first step in the sentencing process, the court shall select a term of at least 20 years.

[¶ 13]   In reducing its twenty-year basic sentence to a maximum sentence of twelve years, the court explicitly considered both aggravating and mitigating factors. Working against Cook were the number of counts to which he pleaded guilty; the age of the victims; the trust relationship he had with the victims; the victim impact; and the troublesome report of the State Forensic Service concerning his future prospects for rehabilitation.   The court weighed these aggravating factors against Cook's early guilty plea, which spared the victims from testifying; Cook's lack of previous mental health or criminal history; his relatively young age; and his strong family support.   The court also considered statutory factors, including 17–A M.R.S. § 1151(8)(A) (2010) (stating that a sentence is not to diminish the gravity of an offense considering the age of the victims).

[¶ 14]   Furthermore, the court explicitly stated that it had considered all of the materials submitted to it, including the more lenient sentencing recommendation in the presentence investigation that Cook contends the court ignored.   Contrary to Cook's implied argument, "[a]lthough a sentencing court is required to consider the existence of mitigating factors, it is not compelled to reduce the basic sentence as a result" of each mitigating factor in the record. *Dalli*, 2010 ME 113, ¶ 9, 8 A.3d at 636.   On this record, the trial court's careful analysis reveals no abuse of discretion in arriving at a maximum sentence that was (1) within the cap to which Cook had agreed; (2) only four years more than the range Cook recommended; and (3) eight years less than the minimum basic sentence mandated by statute.

[¶ 15]   Concerning Cook's assertion that the court ignored step three of the sentencing analysis, which required it to consider whether to suspend any part of the maximum sentence and impose a period of probation, *see* 17–A M.R.S. § 1252–C(3), that step is not applicable in a case where supervised release is mandatory, *see* 17–A M.R.S. § 1231(1–A),[4] because probation and supervised release are mutually exclusive sentencing alternatives.

[¶ 16]   The statute authorizing supervised release provides that "[t]he court, in imposing a sentence of a term of imprisonment *that does not include probation* for a violation of section 253, may include as part of the sentence a requirement that the defendant be placed on a period of supervised release after imprisonment." 17–A M.R.S. § 1231(1) (emphasis added). By providing that a sentence imposed on a conviction for gross sexual assault may include supervised release only if it does not include probation, section 1231(1) excludes supervised release if probation is included. Because a period of supervised release is mandatory in this case pursuant to section 1231(1–A), the court could not impose probation as part of Cook's sentence.   Accordingly, the court did not abuse its discretion in disregarding step three of the sentencing analysis.

B.   Supervised Release

[¶ 17]   Cook challenges the thirty-year term of supervised release imposed by the court, contending that it had no guidance to follow in doing so, and that it conducted an insufficient analysis to support such a significant part of the sentence.   We have not previously had occasion to consider the statute authorizing supervised release, 17–A M.R.S. § 1231 (2010), which was origi-

---

4.   Title 17–A M.R.S. § 1231(1–A) was enacted by P.L.2005, ch. 673, § 2 (effective Aug. 23, 2006).

nally enacted in 2000, *see* P.L.1999, ch. 788, § 7 (effective Aug. 11, 2000), and has subsequently been amended[5] several times.

[¶ 18] Cook correctly highlights the term of supervised release as a significant component of his sentence. For a period of thirty years, commencing on the day he is released from incarceration on his twelve-year sentence of imprisonment, *see* 17–A M.R.S. § 1231(1), he is required, pursuant to the special conditions imposed by the court, to (1) have no contact with the victims, or any children under the age of sixteen without the written permission of his supervising probation officer; (2) undergo a sex offender evaluation and engage in sex offender counseling to his probation officer's satisfaction; (3) live where his supervising probation officer directs; and (4) comply with applicable sex offender registration provisions. Beyond those special conditions, the statute provides that Cook's supervised release "must include the best available monitoring technology for the duration of the period." 17–A M.R.S. § 1231(1–A).[6]

[¶ 19] If at any time during the thirty-year period Cook violates the terms of his supervised release, the court is authorized, upon a full revocation, to incarcerate him for up to thirty years, without credit for any time previously served on supervised release.[7,8] 17–A M.R.S. § 1231(6), (7)(A). Following a partial revocation, "[t]he remaining portion of the period of supervised release that is not required to be served in prison remains in effect to be served after the person's release and is subject to revocation at a later date." 17–A M.R.S. § 1231(6). In theory, then, Cook's sentence could require him to serve twelve years in prison, comply with significant restrictions on his liberty while under supervision for almost thirty years following his release, and then serve another thirty years in prison if his supervised release were to be fully revoked just before it expired.[9] The sobering possibili-

---

5. *See* P.L.2003, ch. 205, § 5 (effective Sept. 13, 2003); P.L.2003, ch. 711, § B–18 (effective July 30, 2004); P.L.2005, ch. 673, § 2 (effective Aug. 23, 2006); P.L.2007, ch. 344, §§ 4, 5 (effective Sept. 20, 2007).

6. The court was authorized to impose as conditions of supervised release any conditions that could be imposed on a term of probation, as well as any "conditions ... that it determine[d] to be reasonable and appropriate to manage the person's behavior." 17–A M.R.S. § 1232 (2010).

7. Cook's supervised release could also be revoked while he is still in prison serving his twelve-year sentence if he commits new criminal conduct while incarcerated, or refuses to "actively participate ... in a sex offender treatment program in accordance with the expectations and judgment of [his] treatment providers." 17–A M.R.S. § 1231(7)(B), (C) (2010).

8. As originally enacted, the statute authorized a court revoking a term of supervised release

to incarcerate the defendant for a term "not exceed[ing] 1/3 of the straight term of imprisonment imposed[,]" P.L.1999, ch. 788, § 7 (effective Aug. 11, 2000); in this case, four years. That restriction was removed when the statute was amended in 2006. P.L.2005, ch. 673, § 2 (effective Aug. 23, 2006).

9. No Sixth Amendment problem is posed by the prospect that Cook could serve a total of forty-two years if his supervised release were fully revoked at a future hearing where a court found facts constituting a violation, because the statutory maximum sentence for the crime charged in Count 2 of the information is "any term of years." 17–A M.R.S. § 1252(4–E); *see Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that the Sixth Amendment requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury"). Even if Cook's Class A offense was subject to the ordinary thirty-year statutory maximum, *see* 17–A M.R.S. § 1252(2)(A)

ty of a seventy-two year involvement with the correctional system requires us to consider the nature and purpose of supervised release, and to then determine the sentencing analysis the court was required to undertake before imposing it as a component of Cook's sentence.

■ [¶ 20] The language of the statute is unambiguous concerning many aspects of supervised release, for example when it begins; the offenses for which it may be imposed; how long it may last; the conditions that may be required; and the procedures for modifying, terminating, or revoking the period of supervised release. 17–A M.R.S. §§ 1231–1233 (2010). The statute is silent, however, concerning what the Legislature intended that a sentencing court consider before imposing a term of supervised release in the first instance, or how the court is to determine how long the term should be in a given case. Because the language of the statute does not clearly indicate the Legislature's intent as to

those questions, we may look to extrinsic sources for guidance. *See Davis Forestry Prods., Inc. v. Downeast Power Co., LLC,* 2011 ME 10, ¶ 9, 12 A.3d 1180, 1183.

■ [¶ 21] As an initial matter, notwithstanding the State's suggestion that we compare the two, guidance concerning supervised release cannot be found solely in the established body of law concerning the imposition of probation, because supervised release is demonstrably not the equivalent of probation.[10] If section 1231 allowed probation in Cook's case (as discussed above, it does not because of the victim's age at the time the charged crimes were committed), and the court determined in step three of the section 1252–C sentencing analysis that probation was appropriate, Cook would have faced a theoretical maximum of twelve years' incarceration, assuming that the court's step two analysis remained the same and the term of probation following the unsuspended

(2010), the First Circuit Court of Appeals has noted that in the case of federal supervised release, on which, as we discuss below, the Maine statute is modeled, "The supervised release period is an independent element of the sentence [that] is not carved out of the maximum permissible time allotted for incarceration under some other criminal statute." *United States v. Work,* 409 F.3d 484, 489 (1st Cir.2005). The court observed that "courts routinely have held that the combined sentence of years of imprisonment plus years of supervised release may exceed the statutory maximum number of years of imprisonment authorized by the substantive statute applicable to the crime of conviction." *Id.* at 489–90 (collecting cases). Accordingly, the court held that "any term of incarceration authorized under the supervised release statute is not limited by reference to the actual term of incarceration served by a defendant pursuant to the substantive criminal statute applicable to the crime of conviction," concluding that "when determining whether a sentence exceeds the maximum permissible under the Constitution, each aspect of the sentence must be analyzed separately." *Id.* at 490 (collect-

ing cases). Applying *Work's* analysis here, the Superior Court imposed a term of imprisonment within the range prescribed by 17–A M.R.S. § 1252(2)(A), and imposed a term of supervised release within the range prescribed by 17–A M.R.S. § 1231(2)(C). Thus, there would be no Sixth Amendment violation even if Cook's substantive offense was subject to the thirty-year maximum. *See Work,* 409 F.3d at 491. Moreover, judicial fact-finding at a supervised release revocation hearing is not subject to the Sixth Amendment's jury trial guarantee. *Id.* at 491; *United States v. Eirby,* 515 F.3d 31, 34 (1st Cir.2008).

10. The Supreme Court of Appeals of West Virginia, in construing that state's supervised release statute, noted that "supervised release is not only an additional prescribed penalty, but it is different from established forms of punishment," such as incarceration, parole, or probation. *State v. James,* 710 S.E.2d 98, 106 (W.Va.2011). The difference "reflects the legislative intent to impose a new and additional penalty to the sentence of a person convicted of certain enumerated offenses." *Id.* at 109.

portion of his sentence was later fully revoked. Here, however, Cook faces a theoretical maximum of forty-two years' incarceration if his supervised release is fully revoked, more than three times the length of the sentence of incarceration imposed on the substantive charges. Put another way, a defendant on probation cannot serve more time than the length of the maximum sentence imposed on his substantive charges; a defendant on supervised release most certainly can. For that weighty reason, although there are some similarities between probation and supervised release, more than a modified version of step three of the section 1252–C analysis is required before a sentencing court may impose such a significant consequence.

[¶ 22] Before we can articulate the sentencing analysis required to impose a term of supervised release, we must first examine its nature and purpose in order to ascertain the Legislature's intent in creating it. To that end we first look for guidance to the Legislature itself. The legislative document accompanying the original enactment of section 1231 reports that the statute is the result of the unanimous recommendation of the Joint Select Committee to Implement a Program for the Control, Care and Treatment of Sexually Violent Predators, created by a joint order of the 118th Legislature. L.D. 308, Summary (119th Legis.2000). The Committee's report, in turn, states its conclusions that (1) supervision of certain sex offenders whose terms of imprisonment have expired is necessary "to ensure that the offender is closely monitored once back in the community[,]" and (2) supervised release is preferable to other alternatives considered by the Committee, such as the civil commitment process used by several states. Final Report of the Joint Select Committee to Implement a Program for the Control, Care and Treatment

of Sexually Violent Predators, Executive Summary & section III (Oct. 15, 1998).

[¶ 23] The report supports the Legislature's explanation that supervised release is intended to augment punishment by imprisonment, but is not intended to directly punish an offender for criminal behavior:

> Supervised release is used in conjunction with the imposition of a straight term of imprisonment and is modeled to some degree upon federal law regarding supervised release (see 18 U.S.C. § 3583).... As with probation, the sanction imposed upon revocation is intended to sanction the violator for failing to abide by the court-ordered conditions. Even in the context of new criminal conduct, the violator is sanctioned for the breach of trust, leaving the actual punishment for any new underlying criminal conduct to the court ultimately responsible for imposing punishment for that new crime.

L.D. 308, Summary (119th Legis.2000).

[¶ 24] The federal statute on which the Maine supervised release statute is modeled, 18 U.S.C.S. § 3583 (2008 & Supp. 2011), is similar to section 1231 in that it provides for a term of supervised release beginning upon release from incarceration, and permits a revoking court to incarcerate the defendant for all or part of the term without credit for time served while under supervision. 18 U.S.C.S. § 3583(a), (e)(3). In discussing the federal statute, the United States Supreme Court has described the purpose of supervised release as primarily non-punitive, and concluded that a court errs "in treating ... time in prison as interchangeable with [a] term of supervised release":

> Congress intended supervised release to assist individuals in their transition to community life. Supervised release ful-

fills rehabilitative ends, distinct from those served by incarceration.

. . . .

[C]onditions [imposed on supervised release] illustrate that supervised release, unlike incarceration, provides individuals with postconfinement assistance.

*United States v. Johnson*, 529 U.S. 53, 59–60, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000).

[¶ 25] Policy statements issued by the United States Sentencing Commission, which a federal court must consider when imposing a term of supervised release, *see* 18 U.S.C.S. §§ 3583(c), 3553(a)(5) (2011), are in accord:

[A] term of supervised release does not replace a portion of the sentence of imprisonment, but rather is an order of supervision in addition to any term of imprisonment imposed by the court.

. . . .

[T]he purpose of supervision for . . . supervised release should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct.

U.S. Sentencing Guidelines Manual, ch. 7, pt. A, (2)(b), (4) (2010).

[¶ 26] Based on the foregoing authority, we conclude that although incarceration following the revocation of a term of supervised release is punishment, it punishes a defendant's failure to abide by conditions of release imposed by the court and the resulting breach of trust, not a defendant's original, or new, criminal conduct. In enacting a system of supervised release modeled on the federal system, the Legislature intended to enhance the safety of the community primarily by supervising and rehabilitating, potentially for a long period of time, sex offenders who have already been punished for their crimes by incarceration, and secondarily by re-incar-cerating the offender if he proves unable to follow the conditions promoting rehabilitation prescribed by the court. This conclusion as to the nature and purpose of supervised release guides our consideration of the sentencing analysis required to impose it.

[¶ 27] Unlike section 1231, the federal statute gives guidance to courts "in determining whether to include a term of supervised release, and . . . in determining the length of the term," by explicitly directing a sentencing court to consider some, but not all, of the statutory factors generally applicable when imposing any sentence. 18 U.S.C.S. § 3583(c), *see* 18 U.S.C.S. § 3553 (2008 & Supp.2011). Tellingly, a federal court considering supervised release is not directed to consider the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C.S. § 3553(a)(2)(A); *see* 18 U.S.C.S. § 3583(c). That, presumably, is the purpose of incarceration and other sentencing alternatives punishing the substantive crime. The factors a court is directed to consider include "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need for deterrence and to protect the public; the defendant's need for "educational or vocational training, medical care, or other correctional treatment"; and the need to provide restitution to victims. 18 U.S.C.S. §§ 3583(c), 3553(a)(1), (2)(B)-(D), (7).

[¶ 28] Like Congress, the Legislature has prescribed statutory considerations applicable to all criminal sentences in Maine, and, like the corresponding federal statute, those considerations include factors apart from direct punishment of the substantive offense. They include

1. To prevent crime through the deterrent effect of sentences, the reha-

bilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety;

2. To encourage restitution in all cases in which the victim can be compensated and other purposes of sentencing can be appropriately served;

3. To minimize correctional experiences which serve to promote further criminality;

4. To give fair warning of the nature of the sentences that may be imposed on the conviction of a crime; [and]

. . . .

7. To promote the development of correctional programs which elicit the cooperation of convicted persons.

17–A M.R.S. § 1151 (2010). In addition, a sentencing court is to consider in every felony case "the character of the offender and the offender's criminal history . . . and the protection of the public interest." 17–A M.R.S. § 1252–C(2).

[¶ 29] Given the genesis of Maine's supervised release statute in its federal counterpart and the similarity in purpose between the two, we adopt the federal approach that requires a court, when imposing a term of supervised release and determining its length, to consider statutory sentencing factors appropriate to its primary purpose of supervision and rehabilitation. Guided by those considerations, the court may then impose any conditions of supervised release authorized by 17–A M.R.S. § 1232 that it deems reasonable and appropriate.

[¶ 30] Procedurally, we adhere to the well-established precedent of *State v. Hewey* and describe, in cases where supervised release is imposed, "a sentencing process by which the significant purposes and relevant factors may be articulated by the trial court in an individual case." 622 A.2d 1151, 1154 (Me.1993). Although a sentencing court imposing supervised release is not required to repeat the three-step section 1252–C analysis, in order to comply with the Legislature's intent and allow for meaningful appellate review, the court must separately articulate its analysis as to the section 1151, section 1252–C(2), and case-specific factors it finds relevant to supervised release, and how those factors led it to arrive at the length and conditions of supervised release imposed.

[¶ 31] When leave to appeal from a sentence that includes supervised release is granted, we will separately review the term of supervised release for misapplication of principle to ensure that supervised release is not imposed as punishment for the defendant's substantive criminal conduct, and for an abuse of discretion concerning the analytical factors selected by the court as appropriate; the length of the resulting term of supervised release; and the conditions imposed on that term. *See id.* at 1155 (recognizing the trial court's "superior posture for evaluating . . . those factors particular to a particular offender"); *Dalli,* 2010 ME 113, ¶¶ 6, 9, 12, 8 A.3d at 635–36 (sentencing analysis reviewed for misapplication of principle and abuse of discretion).

[¶ 32] In this case, the Superior Court briefly articulated the case-specific factors that led it to impose a thirty-year term of supervised release, but it did not have the benefit of the full analysis we announce today. For that reason, and because supervised release is such a significant component of Cook's sentence, we vacate only the term of supervised release and remand for resentencing in light of this opinion.

The entry is:

Thirty-year term of supervised release imposed on Count 2 vacated; remanded for further proceedings consistent with

this opinion. In all other respects, sentences affirmed.