MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 28
Docket:      SRP-15-628
Argued:      October 27, 2016
Decided:     February 14, 2017

Panel:        SAUFLEY C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

WALTER A. PARKER

ALEXANDER, J.

[¶1]  Walter A. Parker appeals the sentence imposed on him by the trial court (Cumberland County, *Warren, J.*) following a resentencing hearing.  The sentence was imposed following Parker's plea of guilty to three counts of gross sexual assault (Class A), 17-A M.R.S. § 253(1)(C) (2016), and two counts of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2016).  All charges involved sexual assaults on a nine-year-old girl over an extended period of time.  The court ultimately sentenced Parker to a twenty-year term of imprisonment followed by fifteen years of supervised release, in accordance with 17-A M.R.S § 1231(2)(C) (2016) and 17-A M.R.S. § 1252(4-E) (2016).

2

[¶2]  Parker contends that the supervised release sentencing, mandated by law, is unconstitutional, as a violation of the due process clause, because it "punishes [the] defendant for his status and particular characteristics, and not for substantive criminal conduct"; and as a violation of the double jeopardy clause because it "may incarcerate [the] defendant twice based upon his substantive criminal conduct and not for his status and particular characteristics."  Parker also contends that imposition of a mandatory term of supervised release resulted in a sentence to "more prison time than under a traditional *Hewey*[1] analysis."  We affirm the sentence.

## I.  CASE HISTORY

[¶3]  The sentencing court found the following facts, which are supported by the record.  Prior to the events leading to this appeal, Parker had a "lengthy criminal history" including "a few felonies and a lot of misdemeanors."  The prior felonies included burglary, criminal threatening with a dangerous weapon, and operating a motor vehicle in violation of the habitual offender law.  Parker's probations on his prior sentences had been "violated on numerous occasions."

---

[1] *State v. Hewey*, 622 A.2d 1151, 1154-1155 (Me. 1993), incorporated into the sentencing statute at 17-A M.R.S. § 1252-C (2016).

[¶4]  The court further found that Parker had sexually assaulted the nine-year-old victim on several occasions over an extended period of time, and that Parker was in a position of trust in the household and acted as a parental figure to the victim.

[¶5]  As a result of this conduct, Parker was indicted on two counts of unlawful sexual contact (Class B) 17-A M.R.S. § 255-A(1)(E-1) and three counts of gross sexual assault (Class A) 17-A M.R.S. § 253(1)(C), all involving a victim under twelve years of age.

[¶6]  On July 13, 2015, Parker pleaded guilty to all five counts in the indictment.  The court (*Clifford, J.*) accepted the plea of guilty, and continued the matter for sentencing before any judge.

[¶7]  Parker appeared before the court (*Warren, J.*) for sentencing on November 20, 2015.  At the sentencing hearing, the State outlined the facts of Parker's sexual violence against the victim, which had occurred over the course of more than one year.  During the first sentencing hearing, the State and Parker argued for different sentences, but each argued for a sentence that would include a significant underlying sentence, with part of the underlying sentence suspended and Parker being placed on probation for a significant period of time following release from imprisonment.

4

[¶8]  For a gross sexual assault committed against a person under twelve years of age, the basic term of imprisonment to begin the analysis required by 17-A M.R.S. § 1252-C (2016) is set at "a term of at least 20 years." 17-A M.R.S. § 1252(4-E) (2016).  As a result, the court, in calculating the basic term of imprisonment pursuant to section 1252(4-E) and step one of its section 1252-C analysis, began with the mandated basic term of imprisonment of twenty years.  The court stated that Parker was a parental figure in the household and that the frequency of the sexual violence was a sentence aggravating factor, particularly because it was committed against a nine-year-old.  The court concluded that this conduct raised the basic sentence to twenty-two years.

[¶9]  In step two of its section 1252-C analysis, the court addressed the aggravating and mitigating factors.  The court found that the victim impact was significant in that she was continuously subjected to this conduct and had been afraid to tell anyone until a few years after the sexual assaults stopped. The court also found that Parker's lengthy criminal history and repeated violations of probation were aggravating factors.  Addressing mitigating factors, the court stated that Parker had accepted responsibility from the very beginning.  In doing so, he avoided a trial, and the victim would not be put

through that "extraordinarily unpleasant" experience. The final mitigating factor the court found was that Parker wants help and counseling, and understands that he presents a public safety issue. The court noted that the aggravating and mitigating factors were "in exact equipoise" and therefore determined that the maximum period of incarceration was twenty-two years.

[¶10] At step three of the section 1252-C analysis, and addressing the issue of probation, the court noted, based on Parker's psychological evaluation, that Parker was in need of "not just treatment but supervision, given that he is at risk of reoffending." As a result, the court determined that all but fourteen years of Parker's term of imprisonment would be suspended with an eighteen-year probation period to follow.

[¶11] Parker's ultimate sentence was twenty-two years' imprisonment, with all but fourteen years suspended, and probation for eighteen years. This sentence contemplated at least thirty-two years of State supervision through incarceration or probation.

[¶12] Four days later, on November 24, 2015, the court issued an order for resentencing. The order stated that after reviewing the relevant statutes and *State v. Cook*, 2011 ME 94, 26 A.3d 834, the court realized that the sentence it had imposed was not authorized by law. On its own motion,

6

pursuant to M.R.U. Crim. P. 35(a), the court ordered a further hearing for resentencing.

[¶13] The resentencing hearing was held on December 15, 2015. At the outset, the court acknowledged that it had imposed an unauthorized sentence by including a term of probation, because when a defendant is sentenced for gross sexual assault of a child under the age of twelve pursuant to 17-A M.R.S. § 253(1)(C)—as was the case here—probation is not available, and supervised release must be imposed. For gross sexual assault of a child under the age of twelve, 17-A M.R.S. § 1231(1-A) (2016) requires that:

> Notwithstanding subsection 1, the court shall impose as part of the sentence a requirement that a defendant convicted of violating section 253, subsection 1, paragraph C be placed on a period of supervised release after imprisonment. The period of supervised release commences on the date the person is released from confinement pursuant to section 1254 and must include the best available monitoring technology for the duration of the period of supervised release.

[¶14] Subsection 1-A in effect bars a probation alternative that is provided in 17-A M.R.S. § 1231(1) (2016), and requires, instead, "a period of supervised release" to commence immediately upon release from confinement and to include utilization of "the best available monitoring technology." The requirement for imposition of "a period of supervised

release" following release from imprisonment is repeated in 17-A M.R.S. § 1252(4-E), which states:

> If the State pleads and proves that a crime under section 253 was committed against a person who had not yet attained 12 years of age, the court, notwithstanding subsection 2, shall impose a definite term of imprisonment for any term of years. In determining the basic term of imprisonment as the first step in the sentencing process, the court shall select a term of at least 20 years. The court shall also impose as part of the sentence a period of supervised release to immediately follow that definite term of imprisonment as mandated by section 1231.

[¶15] Subsection 4-E, by exempting sentencing for gross sexual assault upon a child under age twelve from the thirty-year maximum sentence for Class A crimes specified in section 1252(2), authorizes a "definite" sentence of imprisonment for "any term of years." Subsection 4-E also requires that the basic term of imprisonment to begin the section 1252-C sentencing analysis be at least twenty years and requires imposition of "a period of supervised release" to immediately follow release from imprisonment.[2]

---

[2] Title 17-A M.R.S. § 1231(2)(C) (2016) states that the authorized period of supervised release is "[l]ife for a person sentenced under section 1252, subsection 4-E." The parties and the trial court, in addressing resentencing, appeared to infer that the references in 17-A M.R.S. §§ 1231(1-A) and 1252(4-E) (2016) to "a period of supervised release" allowed some matter of choice in the length of the period of supervised release to be imposed. To the extent that the reference section 1231(2)(C) is ambiguous, the rule of lenity authorizes resolution of ambiguities in favor of the more lenient sentencing choice. *State v. Harrell*, 2012 ME 82, ¶ 5, 45 A.3d 732; *State v. Stevens*, 2007 ME 5, ¶ 5, 912 A.2d 1229.

8

[¶16]  In redetermining the basic term of imprisonment under the first step of its statutory analysis, the court stated that it was "handcuffed by the statute in terms of what sentence should be given," and that it was "constrained by the sentencing statutes to arrive at a sentence that is different from the one . . . [it] previously imposed."  Nonetheless, the court stated that it was starting with the statutorily mandated basic term of at least twenty years, and that for the same reasons it had found at the initial sentencing hearing, that number was increased to twenty-two years.

[¶17]  Addressing the aggravating and mitigating factors under step two of the statutory analysis, the court referred to its findings at the November sentencing hearing.  It found that the aggravating factors were the impact on the victim and Parker's lengthy criminal history.  For mitigating factors, the court found the early acceptance of responsibility and the desire for treatment.  The court again noted that the aggravating and mitigating factors "basically were in equipoise" and that it would adhere to the determination that it had made in the November hearing.  The court then stated that it was "discomforted by the fact that [it] was imposing a 22 year sentence where in the past [it] was imposing a 22 all but 14-year sentence."  With no "escape clause" and unable to use probation to lower the basic twenty-two-year term

of imprisonment, the court reevaluated the aggravating and mitigating factors, finding that it had placed too much weight on Parker's evasiveness and not enough weight on his ultimate acceptance of responsibility. Finding that the mitigating factors outweighed the aggravating factors "slightly," the court reduced the sentence to twenty years.

[¶18] Where the court would typically engage in the third step of the statutory analysis, it acknowledged that pursuant to 17-A M.R.S. § 1231(2)(C), 17-A M.R.S. § 1252(4-E), and our holding in *Cook*, it instead had to determine a period of supervised release to impose following Parker's term of imprisonment. In making such a determination, the court stated that it must consider the purposes of sentencing listed in 17-A M.R.S. § 1151 (2016) and the factors addressed in section 1252-C(2). Reviewing section 1151, the court noted that the "purpose of supervised release would focus on rehabilitation as opposed to deterrence." After discussing the factors listed in sections 1151 and 1252-C(2), and in accordance with the analysis stated in *Cook*, the court determined that a fifteen-year period of supervised release was appropriate. The court then set supervised release conditions prohibiting contact with the victim or her family, being in places where children congregate, and use and

possession of pornography; and requiring monitoring, sex offender treatment, and that Parker live at a residence approved by probation.

[¶19]   Parker filed a timely application to permit the appeal of his sentence.  M.R. App. P. 2(b)(2)(A), 20.  The Sentence Review Panel granted the application to appeal the sentence, and the appeal is properly before us pursuant to M.R. App. P. 2, 20(g), (h).

## II.  LEGAL ANALYSIS

A.    Due Process.

[¶20]   Parker argues that the supervised release sentencing scheme, 17-A M.R.S. § 1231(2)(C), violates his due process rights because it punishes him for his status and characteristics, and not his substantive criminal conduct.   He asserts that the statutory scheme targets a distinct class of persons, violent sex offenders, for open-ended sanctions of incarceration, which, he asserts, exceeds the bounds of criminal sentencing and implicates due process concerns.

[¶21]    Parker's actual complaint focuses not on his status or characteristics—such as gender, age, race, or economic status—but on the application of statutory requirements aggravating his sentence because of the nature of his crime, gross sexual assault, and the age of his victim, under age

twelve. These statutory aggravating factors direct that any adult convicted of committing gross sexual assault upon a child under age twelve face a definite term of imprisonment of at least twenty years, to be immediately followed by a period of supervised release. The combination of imprisonment and supervised release, which, if conditions are violated, may result in further imprisonment, can, under the law, extend for a convicted person's life.

[¶22] As applied to Parker, the trial judge's statement at resentencing indicated that the court contemplated that Parker's maximum time in State custody or supervision could be limited to thirty-five years: twenty years' imprisonment and fifteen years of supervised release which can lead to imprisonment if release conditions are violated. However, the court also understood the possibility that Parker's maximum time in State custody or supervision could approach fifty years.[3]

---

[3] Title 17-A M.R.S. § 1231(6) (2016), addressing possible revocation of a period of supervised release, directs that

> [i]f the court revokes a period of supervised release, the court shall require the person to serve time in prison under the custody of the Department of Corrections. This time in prison may equal all or part of the period of supervised release, without credit for time served on post-release supervision. The remaining portion of the period of supervised release that is not required to be served in prison, if any, may not run during the time in prison and must resume again after the person's release and is subject to revocation at a later date.

Because, as the trial judge referenced, a person serving time in prison following a revocation of a period of supervised release may not receive credit for the time served on supervised release, and any remaining time on supervised release may not run during time in prison and must resume after

[¶23]  In addressing a claim that factors considered at sentencing violated a defendant's due process rights, we have held that courts are accorded wide discretion in the sources and types of information that may be relied upon at sentencing.  *State v. Bennett*, 2015 ME 46, ¶ 22, 114 A.3d 994; *State v. Farnham*, 479 A.2d 887, 890 (Me. 1984).  The court's considerations "are limited only by the due process requirement that such information must be factually reliable and relevant."  *Bennett*, 2015 ME 46, ¶ 22, 114 A.3d 994 (quoting *State v. Grindle*, 2008 ME 38, ¶ 18, 942 A.2d 673).

[¶24]  "Federal cases have interpreted the due process clause as requiring a defendant 'not to be sentenced on false information . . . [and] requir[ing] that the defendant be given an adequate opportunity to refute information relied on at sentencing.'" *Bennett*, 2015 ME 46, ¶ 23, 114 A.3d 994 (quoting *United States v. Wilfred Am. Educ. Corp.*, 953 F.2d 717, 722 (1st Cir. 1992) (citation omitted)).

[¶25]  Here, there is no claim that Parker was sentenced based on false or inadequate information.  Other than complaints about sentencing based on

---

a release from prison, Parker's maximum period in State custody or supervision could be approximately fifty years.

We express no opinion on whether an application of the supervised release law that resulted in a time in State supervision considerably longer than that might present a constitutional proportionality issue.

his "status" or "characteristics," Parker has identified no process that he was due and of which he has been deprived. His due process argument really appears to address the length of his total sentence, assuming his prospective compliance with the conditions of his supervised release, which is a constitutional proportionality claim.

[¶26] The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Article 1, section 9 of the Maine Constitution explicitly provides that "all penalties and punishments shall be proportioned to the offense." Me. Const. art. I, § 9. In *Bennett*, 2015 ME 46, ¶ 15, 114 A.3d 994, we observed that "only the most extreme punishment decided upon by the Legislature as appropriate for an offense could so offend or shock the collective conscience of the people of Maine as to be unconstitutionally disproportionate, or cruel and unusual." (quoting *State v. Ward*, 2011 ME 74, ¶ 18, 21 A.3d 1033 (alterations omitted)).

[¶27] We have approved prison sentences of sixty-five years and forty years in cases where the facts indicated multiple sexual assaults committed against minors. *See, e.g.*, *State v. Sweet*, 2000 ME 14, 745 A.2d 368. As applied in this case, the sentences for multiple Class A gross sexual assaults

committed on a nine-year-old victim—twenty years' imprisonment followed by fifteen years of supervised release with the possibility of fifteen years in prison for violation of supervised release—are not constitutionally disproportionate and are not cruel or unusual punishment. *See Cook*, 2011 ME 94, ¶ 19 n.9, 26 A.3d 834 (addressing sentencing for gross sexual assault committed on minors under the age of twelve and noting that a term of supervised release may be appropriate, even if the combination of the term of imprisonment and the term of supervised release exceed the statutory maximum sentence for the crime).

B.  Double Jeopardy

[¶28]  Parker also argues that the supervised release sentencing process, 17-A M.R.S. § 1231(2)(C), violates the Double Jeopardy Clause because it seeks to punish him twice for the same conduct. He further alleges that the imposition of supervised release is punitive in nature, and not civil or regulatory.

[¶29]  The Double Jeopardy Clauses of the United States Constitution and Maine Constitution protect a criminal defendant from a second prosecution for the same offense after a conviction, and from multiple punishments for the same offense. *State v. Savard*, 659 A.2d 1265, 1266

(Me. 1995). To prevail on his double jeopardy claim, Parker must demonstrate that the term of supervised release punishes him twice for the same offense, or was imposed as the result of a separate proceeding but based on the same conduct. *Id.* Parker argues that he is subject to punishment in two different proceedings—the sentencing hearing, and, should it happen, the supervised release revocation hearing. Because any sanction resulting from violation of supervised release, like any sanction for a violation of probation, is based on violation of the conditions imposed, and not the substantive criminal conduct that led to the imposition of supervised release, double jeopardy concerns are not implicated.

[¶30] The nature of supervised release and imposition of supervised release as part of the original sentencing process were addressed in detail in *Cook*, 2011 ME 94, ¶¶ 21-30, 26 A.3d 834. "[A]lthough incarceration following the revocation of a term of supervised release is punishment, it punishes a defendant's failure to abide by conditions of release imposed by the court and the resulting breach of trust, not a defendant's original, or new, criminal conduct." *Id*. ¶ 26. Parker's double jeopardy claim fails.

16

C.      Three-Step Sentencing Analysis

[¶31]   Parker asserts that the supervised release statutory scheme abrogates the typical *Hewey* analysis, by mandating "at least 20 years" as the first step and completely removing step three by eliminating probation and mandating supervised release, and that as a result he was sentenced to more prison time than he would have been under a traditional *Hewey* analysis.  As a result, Parker contends, he was denied a meaningful proportionality review.

[¶32]  A sentencing court typically engages in a three-step process when imposing a sentence that will include time in prison: (1) it determines a basic period of incarceration, which is set solely by reference to the offender's criminal conduct and the nature and seriousness of the offense; (2) in order to individualize each sentence and set the maximum term, the court next considers aggravating and mitigating factors that will either reduce, enhance, or have no effect on the maximum sentence; and (3) once the sentencing court has determined the maximum period of incarceration, it may suspend a portion of that period and supplement it with a period of probation.  17-A M.R.S. § 1252-C; *State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993).

[¶33]  In determining the length and conditions of supervised release, we have recognized that the usual three-step analysis cannot apply because

the court is barred from suspending any portion of the sentence of imprisonment and is instead required to impose a period of supervised release. *Cook*, 2011 ME 94, ¶ 21, 26 A.3d 834. With that limitation, we have instructed the sentencing court to "consider statutory sentencing factors appropriate to its primary purpose of supervision and rehabilitation" after which it may "impose any conditions of supervised release authorized by 17-A M.R.S. § 1232 that it deems reasonable and appropriate." *Id.* ¶ 29.

[¶34] Here, the court did not misapply the law in setting a twenty-year basic term of imprisonment, as the basic term was statutorily mandated. *State v. Holland*, 2012 ME 2, ¶ 38, 34 A.3d 1130 (noting that our review of the first step is de novo, for misapplication of the law); 17-A M.R.S. § 1252(4-E). The court's discussion of the second step reveals no abuse of discretion in setting the twenty-year maximum sentence, two years less than the original determination made by the court, after reevaluating the aggravating and mitigating factors. *Cook*, 2011 ME 94, ¶ 8, 26 A.3d 834 (observing that our review at step two is for an abuse of discretion). Because it recognized that its original sentence was affected by an error of law, the court's original analysis did not bind the court and prevent it from changing its analysis of the discretionary choices it was making.

18

[¶35]  In imposing supervised release, the sentencing court followed the analysis we required in *Cook*, considered the factors set forth in section 1151 and 1252-C(2), and imposed conditions authorized by section 1232.  *Id.* ¶ 29. The sentencing court properly engaged in the analysis required for imposing a sentence that included supervised release, and the resulting sentence does not reflect any misapplication of principle or error of law.

The entry is:

Judgment affirmed.

Merritt T. Heminway, Esq. (orally), H&H LawCenter, P.A., Portland, for appellant Walter A. Parker

Stephanie Anderson, District Attorney, and Meghan E. Connelly, Asst. Dist. Atty. (orally), and Trevor Savage, Stud. Atty., District Attorney's Office, Portland, for appellee State of Maine

Lawrence C. Winger, Esq., amicus curiae pro se

Cumberland County Unified Criminal Docket docket number CR-2015-723
FOR CLERK REFERENCE ONLY