MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2025 ME 50
Docket:       Pen-24-432
Argued:       May 6, 2025
Decided:      June 17, 2025

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

AARON A. ROBSHAW

MEAD, J.

[¶1]  Aaron A. Robshaw appeals from a judgment of conviction, entered by the trial court (Penobscot County, *Mallonee, J.*) following a jury trial, for gross sexual assault (Class A), unlawful sexual contact (Class A), and unlawful sexual contact (Class B).  17-A M.R.S. §§ 253(1)(C), 255-A(1)(E-1), (F-1) (2025). Robshaw, with leave of the Sentence Review Panel, also appeals from his sentence.  Robshaw contends that the trial court improperly admitted expert testimony concerning child victims' delayed disclosure of sexual abuse, misapplied the law in conducting Robshaw's sentencing analysis, and abused its discretion in imposing a period of supervised release.  We affirm the judgment, his sentence, and his period of supervised release.

## I. BACKGROUND

[¶2]  Viewed in the light most favorable to the State, the record establishes the following facts. *See State v. Cote*, 2015 ME 78, ¶ 2, 118 A.3d 805.

[¶3]  Robshaw was indicted on five counts each of gross sexual assault and unlawful sexual contact against the victim in 2018 and 2019, when the victim was ten and eleven years old.  In 2019, the victim first told her mother about an incident with Robshaw.  Four years later, the victim revealed the full extent of the sexual abuse committed by Robshaw to her mother and then reported it to investigators.

[¶4]  The court held a two-day trial in August 2024.  The victim testified that she would spend time with her mother's best friend, Kerry Labelle, and Labelle's romantic partner, Aaron Robshaw, in Robshaw's trailer while her mother worked.  The victim, Labelle, and Robshaw would typically watch TV on a bed in the back bedroom of the trailer.  Labelle would sometimes step out of the room to smoke a cigarette or cook food, leaving the victim alone with Robshaw.  On multiple occasions, when Labelle was out of the room, Robshaw engaged in physical contact with the victim that constituted sexual acts or unlawful sexual contact as defined by statute and that was specifically alleged

in the indictment.  17-A M.R.S. §§ 251(1)(C), (D), 253(1)(C), 255-A(1)(E-1), (F-1) (2025).

[¶5]  During the trial, the State called a forensic interviewer from the Cumberland County Children's Advocacy Center to testify, in general and not in terms specific to the case, regarding the topic of child victims' delayed disclosure of sexual abuse.  The testimony was meant to explain the extent to which and the reasons why children delay in disclosing incidents of sexual abuse for years and may not disclose the full extent of the abuse all at once.  The court allowed the forensic interviewer to testify as an expert over Robshaw's objection that the expert's testimony would impermissibly bolster the victim's credibility and was not necessary for the jury to understand the evidence.

[¶6]  After the State rested its case, the court granted Robshaw's motion for judgment of acquittal as to count 2, one of the counts of gross sexual assault. At the end of the trial, the jury returned a verdict of guilty on all of the remaining counts.  In September 2024, the court held a sentencing hearing at which the court entered judgment and sentenced Robshaw to twenty years' imprisonment followed by twenty years of supervised release.  Robshaw timely appealed and filed an application to allow an appeal of his sentence.  *See* M.R.

App. P. 2B(b)(1), 20; 15 M.R.S. §§ 2115, 2151 (2025). The Sentence Review Panel granted Robshaw leave to appeal from his sentence.

## II. DISCUSSION

### A. Expert Testimony about Delayed Disclosure

[¶7] Robshaw argues that the court abused its discretion in admitting an expert witness's testimony concerning child victims' delayed disclosure of sexual abuse because it impermissibly bolstered the victim's credibility and was not necessary in order for the jury to understand the evidence.

[¶8] Maine Rule of Evidence 702 allows "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine a fact in issue." "Whether proffered evidence requires expert explanation is a question left to the discretion of the trial court." *State v. Wyman*, 2015 ME 1, ¶ 26, 107 A.3d 641.

[¶9] We have permitted courts to allow qualified experts to testify about delayed disclosure in child sexual abuse cases because such testimony can provide a useful explanation of counterintuitive and inconsistent behavior in children. *See State v. Preston*, 581 A.2d 404, 407 (Me. 1990); *State v. Black*, 537 A.2d 1154, 1156 (Me. 1988); *State v. Smith*, 2024 ME 56, ¶¶ 28-29, 320 A.3d

405. To avoid improper bolstering of a victim's credibility, we have recognized that courts can require experts to limit the scope of their testimony by speaking generally about a topic rather than applying their analysis to the victim. *See State v. Paquin*, 2020 ME 53, ¶ 18, 230 A.3d 17 (holding that no unfair prejudice or abuse of discretion resulted when a court limited an expert's testimony "to the subject of delayed disclosure in general—as opposed to an opinion as to why the victim in [that] case may have made a late disclosure"), *abrogated on other grounds by State v. Armstrong*, 2020 ME 97, ¶¶ 8-11, 237 A.3d 185; *Preston*, 581 A.2d 404, 407 (Me. 1990) (holding that expert testimony that "merely described the phenomena" of delayed disclosures was admissible "to rebut an express or implied defense assertion that such counter-intuitive behavior makes it improbable that either a crime was committed or that this defendant committed the crime, even though it may also have had the effect of bolstering the victim's credibility" (alterations and quotation marks omitted)).

[¶10]  Here, the victim ultimately revealed the full extent of the sexual abuse committed by Robshaw four years after the abuse occurred.  Because a jury might wonder why a victim would take so long in coming forward, the forensic interviewer's testimony, based upon her knowledge and experience,

likely helped the jury to understand the evidence by providing context regarding a potentially counterintuitive behavior in children.

[¶11] Like the expert in *Paquin*, the forensic interviewer limited the scope of her testimony to a general explanation of delayed disclosure. 2020 ME 53, ¶ 18, 230 A.3d 17. The forensic interviewer avoided offering an opinion concerning the victim's disclosure in this case or commenting on whether delayed disclosures were likely to be true. Together, these limitations avoided crossing a line into impermissible bolstering of the victim's credibility. Accordingly, the court did not abuse its discretion in admitting the forensic interviewer's testimony.

## B. Sentencing Analysis

[¶12] Robshaw argues that the court misapplied the law during its sentencing analysis, resulting in an improperly harsh sentence. We review "the determination of the basic sentence (1) de novo for misapplication of legal principles and (2) for an abuse of the court's sentencing power." *State v. Bentley*, 2021 ME 39, ¶ 10, 254 A.3d 1171 (citations and quotation marks omitted).

[¶13] When sentencing a person convicted of a felony in Maine, the sentencing court is required to perform the analysis prescribed in *State v.*

*Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993) and codified at 17-A M.R.S. § 1602(1) (2025). *State v. Ringuette*, 2022 ME 61, ¶ 9, 288 A.3d 393. The *Hewey* analysis consists of three steps:

> (1) the court determines a basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the individual; (2) the court determines the maximum term of imprisonment to be imposed by considering all other relevant sentencing factors, both aggravating and mitigating, appropriate to the case; and (3) the court determines what portion, if any, of the maximum term of imprisonment should be suspended and, if a suspension order is to be entered, determine[s] the appropriate period of probation or administrative release to accompany that suspension.

*Id.* (ellipsis and quotation marks omitted).

[¶14]  In cases of gross sexual assault involving a victim who has not yet attained twelve years of age, the Legislature has mandated a basic term of imprisonment of at least twenty years in step one of the *Hewey* analysis. 17-A M.R.S. § 1252(4-E) (2018); 17-A M.R.S. § 253-A(2) (2025).[1]  In *State v.*

---

[1]  Title 17-A M.R.S. § 1252(4-E) (2018) provided:

> If the State pleads and proves that a crime under section 253 was committed against a person who had not yet attained 12 years of age, the court, notwithstanding subsection 2, shall impose a definite term of imprisonment for any term of years.  In determining the basic term of imprisonment as the first step in the sentencing process, the court shall select a term of at least 20 years.  The court shall also impose as part of the sentence a period of supervised release to immediately follow that definite term of imprisonment as mandated by section 1231.

Because the charged crimes occurred in 2018 and 2019, we apply the sentencing guidelines that were in effect then.  *See State v. Hardy*, 489 A.2d 508, 512 (Me. 1985).  Title 17-A M.R.S. § 1252(4-E) (2018) was repealed and replaced by P.L. 2019, ch. 113, §§ A-1, B-14 (emergency, effective May 16,

*Parker*, 2017 ME 28, ¶ 34, 156 A.3d 118, we affirmed a trial court's sentencing analysis in which it, in sentencing the defendant under the same statute, set the basic term of imprisonment at twenty years in the first step and then imposed a twenty-year sentence after evaluating the aggravating and mitigating factors in the second step.

[¶15]  Here, the trial court, in conducting its analysis, recognized that the first step was prescribed by the Legislature and set the basic term of imprisonment at the minimum of twenty years.  The court then analyzed a variety of aggravating and mitigating factors in step two of the analysis, finding little in terms of mitigating factors and several aggravating factors, including Robshaw's harmful subjective impact on the victim and his criminal record, which included a sex offense in 2004 and multiple failures to comply with requirements for sex offender registration.  The court then sentenced Robshaw

---

2019) (codified at 17-A M.R.S. § 253-A(2) (2025)).  Title 17-A M.R.S. § 253-A(2) is essentially the same as the previous version, providing,

> If the State pleads and proves that a crime under section 253 was committed against an individual who had not yet attained 12 years of age, the court shall impose a definite term of imprisonment for any term of years.  In determining the basic term of imprisonment as the first step in the sentencing process specified in section 1602, subsection 1, paragraph A, the court shall select a definite term of at least 20 years.  The court shall also impose as part of the sentence a period of supervised release to immediately follow that definite term of imprisonment as mandated by section 1881, subsection 1.

to twenty years' imprisonment, choosing not to adjust the sentence based on its findings related to the aggravating and mitigating factors.

[¶16]   The trial court's analysis was consistent with the sentencing analysis we affirmed in *Parker*, 2017 ME 28, ¶ 34, 156 A.3d 118.  Nonetheless, Robshaw contends that by setting the basic sentence at a minimum of twenty years and eliminating the need for the trial court to consider the particular nature and seriousness of the offense, the Legislature has allowed for similar sentences across a large range of situations (i.e., a case a involving a single event that did not involve force at one end of the range and a case involving multiple events, threats, violence, and genital penetration at the other).  Robshaw argues that as a result, he was denied meaningful proportionality review under the Eighth Amendment to the United States Constitution and article 1, section 9 of the Maine Constitution.[2]  However, given the abjectly heinous and cruel nature

---

[2] The Eighth Amendment to the United States Constitution and article 1, section 9 of the Maine Constitution can be implicated during sentencing, and both involve a proportionality analysis. *See State v. Lopez*, 2018 ME 59, ¶¶ 14-15, 184 A.3d 880; *Graham v. Florida*, 560 U.S. 48, 59-60 (2010). In conducting a proportionality analysis pursuant to the Maine Constitution, we apply a two-part test:

> First, we look to see whether a particular sentence is greatly disproportionate to the offense for which it is imposed, and second, if it is not greatly disproportionate, we examine whether it offends prevailing notions of decency.  Only the most extreme punishment decided upon by the Legislature as appropriate for an offense could so offend or shock the collective conscience of the people of Maine as to be unconstitutionally disproportionate, or cruel and unusual.

*State v. Asante*, 2023 ME 24, ¶ 12, 294 A.3d 131 (alterations, citations, and quotation marks omitted). Similarly, the U.S. Supreme Court held that the Eighth Amendment requires that, in conducting a

of an adult engaging in a sexual act with a child under the age of twelve, the particular nature and seriousness of the act appropriately justifies the Legislature's policy decision that the basic sentence analysis starts at twenty years. Moreover, the twenty-year minimum basic sentence may be adjusted upward at step one, and either upward or downward at step two, depending on the specific facts of the case. Nothing indicates that a twenty-year sentence is greatly disproportionate to Robshaw's crimes, nor does the sentence offend prevailing notions of decency. *See Parker*, 2017 ME 28, ¶ 27, 156 A.3d 118 (noting that sixty-five-year and forty-year sentences for cases involving sexual assaults committed against minors were not constitutionally disproportionate and were not cruel or unusual punishment). Accordingly, the trial court did not misapply legal principles or abuse its discretion in conducting its sentencing analysis.

## C.    Supervised Release

[¶17]   Robshaw contends that the trial court abused its discretion by failing to conduct a sufficient analysis when it imposed a period of supervised release with conditions.

---

disproportionality analysis, "[a] court must begin by comparing the gravity of the offense and the severity of the sentence." *Graham*, 560 U.S. at 60.

[¶18]  We "review [a] term of supervised release for misapplication of principle to ensure that supervised release is not imposed as punishment for the defendant's substantive criminal conduct, and for an abuse of discretion concerning the analytical factors selected by the court as appropriate; the length of the resulting term of supervised release; and the conditions imposed on that term." *State v. Cook*, 2011 ME 94, ¶ 31, 26 A.3d 834.

[¶19]  In imposing a period of supervised release, we require trial courts "to consider statutory sentencing factors appropriate to its primary purpose of supervision and rehabilitation." *Id.* ¶ 29.  These sentencing factors include "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for deterrence and to protect the public; the defendant's need for educational or vocational training, medical care, or other correctional treatment; and the need to provide restitution to victims." *Id.* ¶ 27 (quotation marks omitted) (summarizing federal sentencing guidelines); *see also* 17-A M.R.S. § 1501 (2025) (enumerating the purposes of sentencing in Maine).

[¶20]  Title 17-A M.R.S. § 1252(4-E) required trial courts to impose a period of supervised release in accordance with 17-A M.R.S. § 1231 (2018) and

conditions for the supervised release in accordance with 17-A M.R.S. § 1232

(2018).[3] Section 1231(1-A)-(2) stated in pertinent part:

> [T]he court shall impose as part of the sentence a requirement that a defendant convicted of violating section 253, subsection 1, paragraph C be placed on a period of supervised release after imprisonment. . . .
>
> The authorized period of supervised release is . . . [l]ife for a person sentenced under section 1252, subsection 4-E.

Section 1232 provided that in imposing a period of supervised release, the court "shall set conditions of supervised release. . . . The court may also set conditions of supervised release that it determines to be reasonable and appropriate to manage the person's behavior."

[¶21]  Here, the trial court imposed a twenty-year period of supervised release.  In making its decision, the court stated,

> And the reason for this, Mr. Robshaw, is I don't know how else to keep people safe from you.
>
> If you had . . . suffered the consequences of your first sex offense and if you had reformed, as people do, . . . then we would not be

---

[3] Title 17-A M.R.S. § 1252(4-E) (2018) (the statute governing sentencing for gross sexual assault) and 17-A M.R.S. § 1231 (2018) (the statute governing supervised release for sex offenders) were repealed and replaced effective May 16, 2019.  *See supra* n.1; P.L. 2019, ch. 113, §§ A-1, A-2. Section 1231, the statute governing supervised release for sex offenders convicted under 17-A M.R.S. § 253(1)(C) (2018), was replaced by P.L. 2019, ch. 113, § A-2 with 17-A M.R.S. § 1881(1) (2025). Although the wording has changed slightly, the supervised release requirements are essentially the same.  *Compare* 17-A M.R.S. § 1231(1-A), (2)(C) (2018), *with* 17-A M.R.S. § 1881(1) (2025).  Both statutes authorize a court to impose a lifetime period of supervised release on a person convicted of gross sexual assault on someone who has not yet attained twelve years of age.

here, but you couldn't do that, and you couldn't comply with the registration obligations, and now you've committed this offense, and you've hurt this girl, and you've hurt her family, and you've hurt everybody that cares about you. And I don't know how else to prevent that from happening other than to put you under supervision for a very long time.

Given your age, there's going to come a point where . . . you'll be younger when your supervision ends than I am now, but you will be old enough so it's unlikely you will reoffend.

Although the trial court's determination did not discuss every possible factor, it did discuss the need to protect the public from future crimes, the nature and circumstances of the offense in relation to Robshaw's previous crimes, and the likelihood of Robshaw's rehabilitation. *See Cook*, 2011 ME 94, ¶ 28, 26 A.3d 834; 17-A M.R.S. § 1501. Considering Robshaw's history of sexual assault, his failure to comply with sex offender registration requirements, and his age when he completes his sentence, the trial court's analysis was appropriate and reasonable under the circumstances. Furthermore, nothing suggests that the court's imposition of this period of supervision or its conditions were intended to punish Robshaw. *See Cook*, 2011 ME 94, ¶ 31, 26 A.3d 834. Accordingly, the court did not misapply legal principles or abuse its discretion in imposing Robshaw's term of supervised release.

The entry is:

Judgment affirmed.

James M. Mason, Esq. (orally), Handelman & Mason LLC, Brunswick, for appellant Aaron A. Robshaw

R. Christopher Almy, District Attorney, and Mark A. Rucci, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2021-510
FOR CLERK REFERENCE ONLY