MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:     2015 ME 147
Docket:       Han-14-494
Argued:       October 6, 2015
Decided:      November 17, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.

STATE OF MAINE

v.

BRYANT A. CIOMEI

HUMPHREY, J.

[¶1]  Bryant A. Ciomei appeals from a judgment of conviction entered by the trial court (Ellsworth, *R. Murray, J.*) following his conditional guilty plea to a charge of criminal operating under the influence.  Ciomei contends that the court (Ellsworth, *Mallonee, J.*) erred in denying his motion to suppress evidence of his roadside interactions with a game warden, on a dark November night, from the moment that the game warden parked his marked patrol vehicle behind Ciomei's truck, exited the vehicle, and announced his presence by saying, "Hi.  Game warden."  Ciomei contends that the court erred because he was seized at that moment, within the meaning of the Fourth Amendment, and that the seizure was not supported by reasonable, articulable suspicion of criminal conduct.  We

2

conclude that Ciomei was not seized as he alleges, and therefore affirm the judgment.

## I. BACKGROUND

[¶2] Bryant Ciomei was arrested and charged with criminal operating under the influence (Class D), 29-A M.R.S. § 2411 (2014).[1] Ciomei moved to suppress all evidence from his interaction with the game warden leading to his arrest, including the results of any field sobriety tests, arguing that evidence was obtained illegally because he was subjected to an unconstitutional seizure when the warden first encountered him.

[¶3] The District Court found that the game warden was on an early morning patrol for night hunting. While driving, he saw a vehicle parked with its headlights on in a manner consistent with night hunting. As the warden drew nearer, he saw two people outside of the vehicle, urinating. The warden pulled up behind the vehicle in a way that did not prevent it from being driven away. The warden exited his cruiser and engaged with Ciomei, the driver and owner of the vehicle. At that point, the warden observed signs of intoxication and initiated a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968).

---

[1] Ciomei was initially charged with violating 29-A M.R.S. § 2411(1-A)(B)(1) (2014), but entered a conditional plea of guilty to the offense defined by 29-A M.R.S. § 2411(1-A)(A) (2014), pursuant to M.R. Crim. P. 11(a)(2).

[¶4]   Viewing the record in a light most favorable to the court's decision, the court's findings are supported by competent evidence in the record.  *See State v. Bryant*, 2014 ME 94, ¶ 2, 97 A.3d 595.  Only the game warden and Ciomei testified at the suppression hearing.  The game warden testified to the following:  After midnight on November 20, 2013, the warden and two other officers were on patrol for night hunting.  The game warden was in uniform and in a marked patrol vehicle.[2]  As he drove north along Route 15 in the Sedgwick/Brooksville area, he saw a small truck stopped at the stop sign where Haracorda Road meets Route 15.[3]  The truck was partially in the roadway with its headlights on.  The warden believed that the lights were pointing toward a field directly across from the intersection in a manner that caused the warden to suspect night hunting activity.  As the warden drew nearer to the vehicle, he saw two people standing on either side of the truck with the front doors open.  Although the scene was "very dark," the warden soon "had a pretty good idea" that the people were urinating.

---

[2]  Under Maine law, a game warden in uniform has the authority to stop a person based on suspicion of criminal activity.  *See* 12 M.R.S. § 10353(2)(D) (2014).

[3]  It is possible that "Haracorda" is not the correct name of the road.  However, this is the name used in the hearing transcript and by the parties in their briefs on appeal.  The warden described the intersection as follows: "[T]raveling north on Route 15, the intersection would be to your left and . . . it's not a complicated intersection, but . . . it's not a straightforward T-intersection.  There's a small sort of triangle or island, if you will, with an entrance onto the Haracorda exit on the Haracorda also—or off the Haracorda onto Route 15."

4

[¶5]   The warden testified that he turned his vehicle onto Haracorda Road and parked behind the truck.[4]  He did not turn on his vehicle's flashing lights or siren and there was nothing impeding the small truck from traveling forward onto Route 15.   The warden exited his vehicle and said, "Hi.  Game warden."   He testified that he made this statement because it was dark and he wanted to identify himself as a law enforcement officer.[5]  The person on the driver's side of the truck then approached the game warden.  The warden recognized him as Bryant Ciomei from prior dealings—they had a "friendly relationship."  The two men met near the back of Ciomei's truck and the front of the game warden's vehicle.  The warden asked "what was going on."  Ciomei replied that he was giving his friends a ride home.  At that point, the warden testified, he smelled alcohol on Ciomei's breath and observed that Ciomei's eyes were bloodshot and his balance unsteady.  After Ciomei admitted to consuming alcohol, the warden administered field sobriety tests.

[¶6]   In his brief testimony at the suppression hearing, Ciomei did not challenge the warden's account.   The court concluded, based on the evidence

---

[4]  The warden testified that he pulled up behind Ciomei's vehicle "[t]o investigate whatever was going on in the intersection; it was sort of odd that two subjects would be standing out in the middle of an intersection during November at night.  And then as I went by it appeared that they were urinating in the intersection."  It is unclear to what extent the warden's belief that the persons were urinating heightened or lessened his generalized suspicion.

[5]  The warden testified he was in a marked cruiser with reflective markings, but Ciomei's testimony suggests that he first became aware of the warden's identity as a law enforcement officer when the warden said, "Hi.  Game warden."

presented, that the warden did not effect a *Terry* stop, and therefore Ciomei was not seized within the meaning of the Fourth Amendment, prior to the moment the warden observed signs of Ciomei's intoxication. Ciomei entered a conditional guilty plea and filed a timely appeal to us.

## II. DISCUSSION

[¶7] "We review rulings on motions to suppress for errors of law or clearly erroneous findings of fact." *State v. Forsyth*, 2002 ME 75, ¶ 9, 795 A.2d 66. Because the court's factual findings are uncontroverted, we review independently the court's denial of the motion to suppress, and we will uphold that determination "if any reasonable view of the evidence supports the trial court's decision." *State v. Kierstead*, 2015 ME 45, ¶ 14, 114 A.3d 984 (quotation marks omitted).

[¶8] The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, protects "against unreasonable searches and seizures." U.S. Const. amend. IV. "An encounter between a police officer and a citizen implicates the Fourth Amendment only if the officer 'seizes' the citizen." *State v. Moulton*, 1997 ME 228, ¶ 7, 704 A.2d 361. "It is well-established that a police officer lawfully may stop, that is 'seize,' a person only when the officer has an objectively reasonable, articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur," or that a concern for safety has arisen. *State v. Collier*, 2013 ME 44, ¶ 6, 66 A.3d 563

(quotation marks omitted); *State v. Pinkham*, 565 A.2d 318, 319-20 (Me. 1989). However, it is also well established that "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry*, 392 U.S. at 19 n.16. The Fourth Amendment is not implicated where an officer merely approaches a person on the street or in another public place to ask questions or engage in consensual conversation. *State v. Gulick*, 2000 ME 170, ¶¶ 11, 17 n.7, 759 A.2d 1085; *Moulton*, 1997 ME 228, ¶ 8, 704 A.2d 361. It is "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen [that a court may] conclude that a 'seizure' has occurred." *Terry*, 392 U.S. at 19 n.16; *see also United States v. Mendenhall*, 446 U.S. 544, 553 (1980). The inquiry is objective: a court must look to "all of the circumstances surrounding the incident"[6] to determine whether "a reasonable person would have

---

[6] To determine whether a seizure has occurred, a court will consider a nonexhaustive list of factors, including:
- the threatening presence of several officers;
- the display of a weapon by an officer;
- some physical touching of the person of the citizen;
- the use of language or tone of voice indicating that compliance with the officer's request might be compelled;
- whether the officer was blocking the defendant's path to leave;
- the use of sirens, lights, or a loudspeaker;
- the display of a badge or wearing of a uniform;
- the location of the encounter;
- whether there was a chase; and
- whether the officer approaches on foot or in a vehicle.

*See State v. Collier*, 2013 ME 44, ¶ 8, 66 A.3d 563.

believed that he was not free to leave" the encounter with the police officer. *Mendenhall*, 446 U.S. at 554.

[¶9]  Ciomei argues that he was seized within the meaning of the Fourth Amendment "the moment the officer announced he was a 'Game Warden.'"  We disagree, and because this is an objective inquiry focusing on a reasonable person, Ciomei's contention that he felt unable to leave when the warden identified himself, and the warden's testimony that he would have found a reason to stop Ciomei if he had driven away, are both irrelevant.  *See State v. Cilley*, 1998 ME 34, ¶ 7, 707 A.2d 79 ("[A] law enforcement officer's uncommunicated, subjective intent to detain a citizen is not relevant to determining whether a seizure has occurred.").  The court did not find, and there is no evidence indicating, that the warden displayed his weapon, turned on his siren, flashing lights or loudspeaker, or touched Ciomei in any way.  The warden did not physically block Ciomei's path to leave the encounter by car or on foot, and the encounter did not occur in a place where Ciomei's movements were constrained.  Although there may have been additional officers in the warden's vehicle, as the warden testified, there is no evidence that Ciomei was aware of them.  Finally, there is no evidence that the warden made any request of, or issued any order to, Ciomei—he simply identified himself as a game warden and asked "what was going on."  The evidence in this case is similar to the evidence in those cases in which we have determined that

8

there was no seizure because an officer merely approached a person in a public place to make an inquiry and did not indicate in any way that the person was not free to leave. *See, e.g., Collier*, 2013 ME 44, ¶¶ 2-3, 9-10, 66 A.3d 563; *Cilley*, 1998 ME 34, ¶¶ 2-4, 8, 707 A.2d 79; *Moulton*, 1997 ME 228, ¶¶ 2-3, 9, 704 A.2d 361.[7]

[¶10]  Although the warden testified that he arrived in a marked police vehicle, in uniform, and announced that he was a game warden, this is not sufficient to constitute a seizure.  The fact that an officer is in uniform cannot be dispositive, otherwise all encounters between uniformed law enforcement officers and citizens would automatically be "seizures."  Nor does an officer's approach while driving a police vehicle constitute a seizure. *See Collier*, 2013 ME 44, ¶ 9, 66 A.3d 563 ("As a matter of law, the mere fact that a trooper was driving behind Collier, even as Collier turned into an empty parking lot, cannot support the finding of a seizure.").  In the particular circumstances of this case, the warden's announcement that he was a game warden was the functional equivalent of wearing a uniform or driving a marked patrol car.

[¶11]  Because we conclude that Ciomei was not seized at any time before the warden observed signs of Ciomei's intoxication, we need not consider whether

---

[7]  *State v. Garland*, 482 A.2d 139 (Me. 1984), which is cited by Ciomei, is distinguishable because, in that case, the officer effected a seizure by asking the driver for his identification, whereas in the present case, the warden merely announced his presence to Ciomei. *See id.* at 142.

the warden had an objectively reasonable, articulable suspicion that criminal conduct had occurred, was occurring, or was about to occur before that moment. The court did not err in denying Ciomei's motion to suppress.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jeffrey C. Toothaker, Esq., Ellsworth, for appellant Bryant A. Ciomei

Matthew J. Foster, District Attorney, and Delwyn E. Webster, Asst. Dist. Atty., Prosecutorial District VII, Ellsworth, for appellee State of Maine

**At oral argument:**

Jeffrey C. Toothaker, Esq., for appellant Bryant A. Ciomei

Delwyn E. Webster, Asst. Dist. Atty., for appellee State of Maine

Ellsworth District Court docket number CR-2013-359
FOR CLERK REFERENCE ONLY