MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2019 ME 44
Docket:        And-18-275
Argued:        March 5, 2019
Decided:       March 26, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

MICHAEL G. CUNNEEN


HJELM, J.

[¶1]  Michael G. Cunneen appeals from a judgment convicting him of unlawful possession of scheduled drugs (hydrocodone) (Class C), 17-A M.R.S. § 1107-A(1)(B-1)(5) (2018);[1] unlawful possession of scheduled drugs (diazepam) (Class E), 17-A M.R.S. § 1107-A(1)(E) (2018); and refusing to submit to arrest or detention (Class E), 17-A M.R.S. § 751-B(1)(A) (2018), entered in the Unified Criminal Docket (Androscoggin County, *Kennedy, J.*) after a jury trial.  Cunneen argues that the court (*Clifford, A.R.J.*) erred by denying his motion to suppress evidence obtained as the result of a roadside encounter with a police officer.  He also asserts that the court (*Kennedy, J.*) erred by

---

[1]  This charge is a Class C offense because it contains an allegation that Cunneen previously had been convicted of one of several types of drug-related crimes.

2

engaging in a sentencing analysis that did not comply with the framework prescribed in 17-A M.R.S. § 1252-C (2018).[2]  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Given the issues presented on this appeal, the following description of the record largely focuses on the evidence presented at the hearing on Cunneen's suppression motion—which we view in the light most favorable to the court's order, *see State v. Collier*, 2013 ME 44, ¶ 2, 66 A.3d 563—and the sentencing hearing.

[¶3]  On the night of March 28, 2017, a Mechanic Falls police officer noticed a van leaving a parking lot near an area that previously had generated complaints of drug activity.  The vehicle was traveling in the opposite direction of the police cruiser, so the officer turned his cruiser around and began following the van, which eventually turned onto a "dark" and "not heavily traveled" street in a residential neighborhood.

---

[2] Cunneen also argues that during the trial the court (*Kennedy, J.*) abused its discretion by denying his two motions for a mistrial that were based on a statement made by the investigating officer during the officer's testimony and the publication of a very brief portion of the recording of the roadside investigation containing a statement that the parties had agreed would not be presented to the jury. Cunneen's challenges to the court's denial of his motions for a mistrial are unpersuasive, and we do not address them further.  *See State v. Bridges*, 2004 ME 102, ¶ 11, 854 A.2d 855 (stating that "[a] motion for a mistrial should be denied except in the rare circumstance that the trial is unable to continue with a fair result and only a new trial will satisfy the interests of justice"); *see also State v. Tarbox*, 2017 ME 71, ¶ 18, 158 A.3d 957.

[¶4] Without being signaled in any way to stop, the van pulled to the side of the road at a spot where there were no nearby houses or driveways. The officer pulled behind the van and activated his rear emergency light "so that . . . [he] could be . . . located if anything was to happen." The ensuing encounter between Cunneen and the officer was recorded on the cruiser's windshield camera. The driver of the van—Cunneen—extended his left arm and head from the driver's side window. Cunneen initiated verbal contact with the officer by asking what was going on, and the officer responded, "I'm finding out why you're pulling over." Cunneen replied that he "pulled over because [he] saw [the officer] turn around."

[¶5] When the officer, using a flashlight, approached the driver's side of the van, he noticed "a large chunk of what appeared to be white powdery residue in [Cunneen's] nostril." The officer suspected that the white residue was drugs, and he also noted an odor of alcohol emanating from the vehicle. The officer asked Cunneen to step out of the vehicle and place his hands on the rear of the van.

[¶6] Cunneen was less than fully compliant, and the officer instructed Cunneen "numerous times to put his hands behind his back, stop resisting and pulling away." Several times, Cunneen walked away from the officer and, at one

4

point, can be seen on the recording throwing an object into a snowbank on the side of the road.[3] Despite the officer's orders, Cunneen "continued to scream and holler" and "was pulling away from [the officer], turning his body, [and] not being compliant to commands." Cunneen continued to refuse to submit to the officer, remained argumentative, and eventually was placed under arrest.

[¶7] After being charged initially by criminal complaint, in July of 2017 Cunneen was indicted for the three charges for which he now stands convicted—unlawful possession of scheduled drugs (hydrocodone) (Class C); unlawful possession of scheduled drugs (diazepam) (Class E); and refusing to submit to arrest or detention (Class E)—and a fourth charge, unlawful possession of scheduled drugs (hydrocodone) (Class D), 17-A M.R.S. § 1107-A(1)(C) (2018), which the State dismissed prior to trial.

[¶8] Contending that his roadside interaction with the officer rose to the level of a detention and was not supported by reasonable articulable suspicion,

---

[3] After reviewing the video later in the evening and seeing the images of Cunneen throwing the object into the snow bank, the officer returned to the scene and recovered a pill bottle that contained twenty hydrocodone pills and more than sixty diazepam pills. This evidence formed the basis for the drug charges in this case.

The recording also shows that, after Cunneen exited the van at the officer's direction, a passenger in the van moved into the driver's seat and, at Cunneen's instruction but in defiance of the officer's order, sped away from the scene, but before doing so drove very close to the officer and calmly said, "You can shoot me right now, sir, or you can let us go."

Cunneen moved to suppress all evidence obtained as a result of that encounter. After holding a hearing in January of 2018, the court (*Clifford, A.R.J.*) denied Cunneen's motion, concluding that the officer did not detain Cunneen until the officer observed the white powder in Cunneen's nose. The court determined that the officer's observation constituted reasonable articulable suspicion of criminal conduct, which then allowed the officer to detain Cunneen.

[¶9]  Cunneen moved for further findings of fact and conclusions of law, which consisted of a series of interrogatories to the court on several factual aspects of the suppression issue. In response, the court issued an order containing additional findings, all of which are supported by the record. *See State v. Seamon*, 2017 ME 123, ¶ 2, 165 A.3d 342. Among the findings were that, while the officer followed the van operated by Cunneen, neither the cruiser's blue lights nor the siren was activated; Cunneen stopped the van of his own volition; and until the officer was close enough to Cunneen to observe the powdery substance in Cunneen's nostril, there was no detention or stop for constitutional purposes.

[¶10]  In May of 2018, the court (*Kennedy, J.*) held a one-day jury trial, which resulted in guilty verdicts on all three charges. After holding a sentencing hearing the following month, the court sentenced Cunneen on the

6

Class C charge of unlawful possession of scheduled drugs to one year of incarceration with all but seven days suspended, one year of probation, the minimum mandatory fine of $400, and restitution for the cost of the drug analysis. The court imposed a concurrent seven-day jail term on the charge of refusing to submit to arrest or detention and another minimum mandatory $400 fine on the Class E charge of unlawful possession of scheduled drugs.

[¶11] Cunneen filed a timely direct appeal, *see* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1), but did not apply for sentence review, *see* 15 M.R.S. §§ 2151-2157 (2018); M.R. App. P. 20.

## II. DISCUSSION

[¶12] Cunneen argues on appeal that the court erred by denying his motion to suppress the evidence obtained as a result of the roadside encounter with the officer, including the pill bottle and its contents, and by considering Cunneen's behavior while resisting arrest as an aggravating factor on all counts, after the court had already considered that same factor in setting a basic sentence for the charge of resisting arrest.

A.    Motion to Suppress

[¶13] The dispositive question raised in Cunneen's suppression motion is when, during his roadside encounter with the officer, he became subject to

detention. Cunneen contends that the officer's actions—which included turning the cruiser around after observing Cunneen leave the parking area, following Cunneen's van, activating the cruiser's rear light bar after both vehicles had come to a stop, and approaching Cunneen's van with a flashlight—resulted in a Fourth Amendment detention because those actions constituted a show of authority sufficient to lead a reasonable person to conclude that he was not free to leave. The State, on the other hand, asserts—and the court concluded—that there was no detention until the officer observed the white powder in Cunneen's nose. "When reviewing a ruling on a motion to suppress, we review the court's factual findings for clear error and its legal conclusions de novo" and "will uphold the court's denial of a motion to suppress if any reasonable view of the evidence supports the court's decision." *State v. Marquis*, 2018 ME 39, ¶ 15, 181 A.3d 684.

[¶14] The inquiry as to whether a seizure has occurred is an objective one. *State v. Ciomei*, 2015 ME 147, ¶ 8, 127 A.3d 548. A seizure implicating the Fourth Amendment occurs when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Collier*, 2013 ME 44, ¶ 7, 66 A.3d 563 (quotation marks omitted).

[¶15]  As we have held, not "every contact between police and a citizen implicates the Fourth Amendment right to be free from unreasonable searches and seizures; an officer may approach a citizen and engage in a consensual conversation without effecting a detention for purposes of the Fourth Amendment, and thus need not have an articulable suspicion before engaging in that conversation." *Id.* (alteration and quotation marks omitted); *see also State v. Gulick*, 2000 ME 170, ¶ 17 n.7, 759 A.2d 1085.  The question of whether an officer has detained someone—or is merely engaged in an encounter that falls short of having constitutional significance—involves a consideration of an officer's use of physical force or show of authority.  *Collier*, 2013 ME 44, ¶ 8, 66 A.3d 563.  Relevant factors include, for example, "the threatening presence of several officers; the display or use of a weapon; the use of physical touching or force; the language or tone of voice indicating that compliance with the officer's request might be compelled; whether the officer was blocking the defendant's path to leave; the use of sirens, lights, or a loudspeaker; the display of a badge or wearing of a uniform; the location of the encounter; whether there was a chase; and whether the officer approaches on foot or in a vehicle." *Id.* (quotation marks omitted).

[¶16]  Here, Cunneen's choice to stop his vehicle did not implicate the Fourth Amendment.  Cunneen pulled to the side of the road and stopped his van when the officer merely followed him without having activated the cruiser's emergency lights or siren and without having signaled Cunneen in some other way to stop.  *See id.* ¶ 9 ("As a matter of law, the mere fact that a trooper was driving behind [the appellant], even as [the appellant] turned into an empty parking lot, cannot support the finding of a seizure."); *see also Gulick*, 2000 ME 170, ¶¶ 3, 11, 759 A.2d 1085; *State v. Brewer*, 1999 ME 58, ¶ 12, 727 A.2d 352.  Indeed, the motion court did not find—and the evidence presented at the suppression hearing did not require the court to find[4]—that when Cunneen

---

[4]  Maine Rule of Unified Criminal Procedure 41A(d) requires a court to make findings of fact and conclusions of law in support of an order adjudicating a suppression motion.  If the court fails to do so, the rule then allows a party to request that the court issue findings and conclusions.  M.R.U. Crim. P. 41A(d).  Here, although the court issued an initial set of findings and conclusions, Cunneen requested additional findings and conclusions but did so in a motion that presented the court with a series of questions.  That format would be fatally defective pursuant to the analogue of the rule that applies in civil proceedings because in civil cases a motion for further findings and conclusions must present the proposed affirmative findings and conclusions that the movant seeks the court to issue.  *See* M.R. Civ. P. 52(b); *Eremita v. Marchiori*, 2016 ME 160, ¶ 3, 150 A.3d 336**.**  Neither criminal rule 41A(d) nor our case law extends that requirement to motions for findings and conclusions filed in criminal cases.  Nonetheless, to effectively focus the court on the evidence and issues that the movant wishes the court to address, a prudent party in a criminal case who files a motion pursuant to Rule 41A(d) will adhere to the requirements associated with the civil rules.

Even if Cunneen's motion for findings and conclusions can be seen as adequate pursuant to Rule 41A(d), he did not request that the court address the factual question of whether he had been aware that he was being followed by a police officer rather than someone not in law enforcement.  Because of the lack of any request for the court to address that issue, we would be free to attribute to the court an implicit finding, which is supported by the evidence, that, when Cunneen stopped his vehicle by the side of the road, he did *not* know that it was a police officer who had been following him.  *See*

stopped he even knew that he was being followed by a police officer. The court correctly found that Cunneen was not seized for Fourth Amendment purposes when he pulled to the side of the road.

[¶17] Cunneen further contends that his interaction with the officer rose to the level of a Fourth Amendment seizure when the officer emerged from the cruiser and informed Cunneen that he was there to "find[] out" what Cunneen was doing. An examination of the factors germane to the detention analysis does not make the contrary conclusion erroneous. Although the officer was in uniform and was driving a marked police cruiser, he was alone. He did not display a weapon or badge, activate his siren or flashing blue lights facing Cunneen, or block Cunneen from leaving. Cunneen initiated verbal contact with the officer by asking him what was going on. When the officer responded by saying that he was trying to find out why Cunneen had pulled over, the officer did not touch Cunneen, issue any command, or respond in a tone of voice that indicated compliance was required or that exerted authority. *See Collier*, 2013 ME 44, ¶ 8, 66 A.3d 563; *cf. State v. Patterson*, 2005 ME 26, ¶¶ 6, 14, 868 A.2d 188 (affirming a suppression order because the trial court reasonably could

---

*Sullivan v. Tardiff*, 2015 ME 121, ¶ 15, 124 A.3d 652. This would further weaken any claim by Cunneen that his constitutional rights were violated when he stopped by the side of the road.

have found that the officer's request to "'please roll down the window'" constituted an order). Further, given the time of night and the absence of any ambient lighting, the officer's use of a flashlight did not convert the situation into a detention.

[¶18] Almost immediately after the officer was in Cunneen's immediate presence, the officer noticed a white powdery substance in Cunneen's nostril. Particularly when combined with the odor of alcohol the officer detected as coming from the van, this justified an investigatory detention of Cunneen—a conclusion that Cunneen does not challenge. *See State v. Moulton*, 1997 ME 228, ¶ 10, 704 A.2d 361. Up to that point, however, the officer's conduct and interaction with Cunneen did not rise to the level of a Fourth Amendment seizure, and the court did not err by denying Cunneen's motion to suppress.

B.    Sentencing

[¶19] Cunneen argues that the court erred by considering his behavior when he resisted arrest as an aggravating factor to determine the maximum period of incarceration in the second of the three-step sentencing framework, when the court had already considered that evidence in determining the basic sentence, which is the first step of the process. In effect, Cunneen contends that

the court double-counted a factor in its sentencing analysis. The claim of error is not borne out by the record.

[¶20] We first note that the sentences involving incarceration, which had the overall effect of one year with all but seven days suspended, were *exactly* what Cunneen urged the court to impose.[5] Although here he seeks to challenge the sentences, the court's adoption of his sentence recommendations makes it difficult for him to persuasively assert error.

[¶21] Regardless of whether Cunneen would be able to clear this hurdle on the merits, his challenge is not cognizable on this direct appeal. After the jury returned guilty verdicts, the court became responsible for imposing sentences on three charges—one Class C crime and two Class E crimes. The three-step process that is the predicate of Cunneen's challenge to the sentences does not apply to Class D or E crimes and therefore applies here only to the Class C drug possession charge. *See* 17-A M.R.S. § 1252-C. Pursuant to that statute, in the first step of the sentencing analysis, the court was required to impose the basic sentence based on "the particular nature and seriousness of

---

[5] Cunneen requested that the court impose on count 1 a sentence of one year with all but 7 days suspended, and a seven-day concurrent sentence on the count that Cunneen identified as count 3, but which, due to the pretrial dismissal of the original count 2, in reality appears to be count 4. These are the sentences the court imposed. The court's only departure from Cunneen's sentence recommendations was to impose the minimum mandatory fines on the drug charges rather than to waive the fines as Cunneen had requested.

the offense as committed by the offender." 17-A M.R.S. § 1252-C(1); *see Seamon*, 2017 ME 123, ¶ 12 n.2, 165 A.3d 342. Here, the court set the basic sentence at the "low end" of the range of a lawful sentence and, in doing so, did not state that it was considering Cunneen's resistive behavior during the traffic stop.

[¶22] The court next turned to the second step of the sentencing process to determine the maximum period of incarceration in order to individualize the ultimate sentence through a consideration of "all other relevant sentencing factors, both aggravating and mitigating, appropriate to that case." 17-A M.R.S. § 1252-C(2); *see Seamon*, 2017 ME 123, ¶ 12, n.2, 165 A.3d 342; *State v. Cook*, 2011 ME 94, ¶ 12, 26 A.3d 834. This is when the court referred to Cunneen's challenging and uncooperative behavior during his interaction with the officer—some of the same conduct that gave rise to the charge of refusing to submit to arrest or detention. Based on this, as well as mitigating factors that it articulated, the court set the maximum sentence at one year.

[¶23] In setting that maximum sentence, the court did not state or otherwise suggest that it was applying that part of the analysis to the charge of refusing to submit to arrest—in fact, the court had already articulated the sentence to be imposed on that charge. Therefore, contrary to Cunneen's

14

contention, the court did not engage in double-counting any factor against Cunneen. As Cunneen's behavior during his roadside encounter with the officer bears on the Class C crime, the court considered it only once—during the second step of the sentencing process. And as that factor related to the resisting charge itself, the court also considered it only once—when it set the sentence.

[¶24]  Because the court evaluated the evidence only once in sentencing Cunneen on the Class C charge, the only possible error committed by the court would be *when*, in the three-step process, it took that evidence into account. For example, a court might err by characterizing certain evidence as an aggravating factor in the second step of the sentencing process if that evidence should have been taken into consideration in the first step, when the court assesses the way the crime itself was committed.[6]

[¶25]  On a direct appeal of a sentence, which is the process that Cunneen has invoked here, the justiciable questions are limited to claims that a sentence is illegal, was imposed in an illegal manner, or is beyond the court's jurisdiction. *State v. Bennett*, 2015 ME 46, ¶ 11, 114 A.3d 994; *see also State v. Cunningham*,

---

[6]  In fact, in his sentencing memorandum presented to the trial court, Cunneen stated that his own behavior toward the officer was an aggravating factor, which would therefore be considered during the second step of the sentencing process—an approach that Cunneen may now be seen to present as judicial error.

1998 ME 167, ¶ 5, 715 A.2d 156 (stating that "we do not consider the legality of a sentence on direct appeal unless a jurisdictional infirmity appears on the record so plainly as to preclude rational disagreement as to its existence." (quotation marks omitted)).  The sentences imposed here were neither illegal nor outside of the court's jurisdiction.

[¶26]   Beyond that, we have made clear that "[a] departure from the sentencing process set forth in *State v. Hewey*, 622 A.2d 1151 (Me. 1993)[,] and now codified at [17-A M.R.S. § 1252-C], creates no reviewable issue on direct appeal." *Cunningham*, 1998 ME 167,  ¶ 5, 715 A.2d 156.  Because of the nature of any possible error, Cunneen was required to have raised it by seeking leave with this Court's Sentence Review Panel to allow a discretionary review of sentence pursuant to 15 M.R.S. § 2152 and Maine Rule of Appellate Procedure 20.  Because Cunneen did not apply to pursue a discretionary appeal but rather has pursued his claim only on this direct appeal, we do not consider his claim of error.

### III.  CONCLUSION

[¶27]  The officer's interaction with Cunneen before he observed a white powdery substance in Cunneen's nostril did not constitute a Fourth

Amendment seizure, and any potential challenge to his sentence is not cognizable on direct appeal.  We therefore affirm the judgment.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Michael G. Cunneen

Andrew S. Robinson, District Attorney, Nathan Walsh, Asst. Dist. Atty. (orally), and Michael B. Dumas, Asst. Dist. Atty., Prosecutorial District III, Lewiston, for appellee State of Maine

Androscoggin County Unified Criminal Docket docket number CR-2017-951
FOR CLERK REFERENCE ONLY