STATE OF MAINE                          UNIFIED CRIMINAL DOCKET
KENNEBEC, ss.                           AUGUSTA
                                        DOCKET NO. CD-CR-18-189


STATE OF MAINE


v.                                      **ORDER ON DEFENDANT'S**
                                        **MOTION TO SUPPRESS**


KIJAUME TAFT,
        Defendant


        This matter was heard and argued to the Court on July 1, 2019 with respect to the Defendant's Motion to Suppress filed August 2, 2018[1].   The issues for the Court were reduced by counsel at hearing to whether there was reasonable articulable suspicion to stop the vehicle Defendant was driving, and whether Defendant was "*de facto* arrested during the stop" without probable cause to do so.

        After hearing, and after the Court has had the opportunity to review the file, the notes taken during the hearing, and the post-hearing briefs filed by counsel of record on July 29, 2019, the Court makes the following Findings of Fact and Conclusions of Law upon which the **Order** set forth below is based:

## I.  Findings of Fact:

        1.    On February 1, 2018 at about 9:50 a.m. Officer Nathan Walker (hereinafter "Walker") received a call from fellow Special Agent King (hereinafter "King") of the Maine Drug Enforcement Agency that there was going to be a drug transaction taking place shortly, and that King was seeking assistance from Walker.  Walker had been in law enforcement since 2003.  Walker was given a description of the motor vehicle thought to be involved, and began following what turned out to be a silver Chevrolet Impala from Windsor into Waterville.  Other drug enforcement agents were also following the Impala.

        2.    The vehicle was followed into the Burger King parking lot on College Avenue in Waterville.  A woman exited the Impala and met another woman who exited a Ford Explorer.  The two women got inside the Explorer for a short period of time.  Then the first woman got back into the Impala and drove away, while the

---

[1] This motion has been scheduled, only to be continued, eleven times in the past.

other woman went first to a red sedan, then next to a pickup truck, all for short periods of time.

3.     From his education and experience Walker believed a drug transaction(s) had just taken place based upon the conduct of the two women.

4.  While watching the Explorer the registration plate was "run", with the information coming back that the vehicle was registered to the Defendant. Walker had information from a reliable informant that the Defendant was dealing drugs in the central Maine area.

5.  The Explorer left, and Walker followed the vehicle. The Explorer drove into Winslow, with Walker following. The Explorer stopped at a Subway shop, where the occupants got out and went into the shop to eat.

6.  Walker was told the vehicle was going to be stopped. The vehicle was in fact stopped on the bridge connecting Winslow with Waterville after the occupants got back into the Explorer and drove away.

7.  Officer Daniel Ames (hereinafter "Ames") is an experienced police officer with the Waterville Police Department for 31 years, the last seven years with the Maine Drug Enforcement Agency. He was another officer who followed the Explorer to Subway. While the occupants were in Subway Ames was told by his superior that the vehicle's occupants had engaged in a drug deal, that there were "pre-marked bills" in the vehicle, and that the vehicle should be stopped.

8.  The vehicle was thereafter stopped by law enforcement with their blue lights on their vehicles activated. The officers approached the vehicle at gunpoint and ordered the occupants out of the vehicle. The Defendant was shortly handcuffed thereafter. The Defendant was found with a large wad of money, some of which were pre-marked bills. A drug-sniffing dog was brought to the scene of the stop by law enforcement. The woman (Ms. McNeil) initially denied possessing any drugs. When advised that the dog was going to "sniff" her to ascertain whether drugs were present on her, Ms. McNeil turned over a quantity of material that the officers believed were illegal drugs from her person, informing the officers that the Defendant had passed the drugs to her after seeing the law enforcement officers. The suspected drugs were not field-tested. Law enforcement subsequently conducted a "canine sniff" of the vehicle that resulted in the suspicion that drugs were present. The dog "hit" on the passenger side of the vehicle.

---

Walker estimated the reliability of the informant in the past as "close to 100%."

Counsel stipulated that Defendant would testify that he was removed from the vehicle at gunpoint shortly after the vehicle was stopped. Although the Court is free to reject the stipulation, there was no evidence presented by the State to the contrary.

Ms. McNeil acknowledged that she had what she termed "drugs" in her bra and turned the material over to law enforcement. Officer Ames testified that the quantity was sufficient to charge trafficking. This actually occurred before the dog "sniffed" the Ford Explorer.

2

## II. Conclusions of Law:

9. The Defendant challenges the conclusion that there was reasonable, articulable suspicion to stop the Defendant's vehicle while it was on the bridge connecting Waterville and Winslow. The Defendant also contends that his interaction with the police after the stop of his vehicle amounted to a *de facto* arrest without probable cause, and therefore illegal. The Court will discuss both contentions below.

### A. The stop of the Defendant's vehicle on the bridge was illegal.

10. The Fourth Amendment to the United States Constitution protects citizens from unreasonable intrusions of police officers and other government agents. *State v. Blier*, 2017 ME 103, ¶ 8. To conduct a constitutionally permissible traffic stop, law enforcement must have, at the time of the stop, "an articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur, and the officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop [must be] objectively reasonable in the totality of the circumstances." *State v. Donatelli*, 2010 ME 43, ¶ 11.

11. "Reasonable and articulable suspicion" to conduct an investigatory stop can rest on the collective knowledge of law enforcement. *State v. Carr*, 1997 ME 221, ¶ 7. Reasonable and articulable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, but the suspicion needs to be based on more than speculation or an unsubstantiated hunch. An investigatory stop based upon a tip need not be corroborated by an officer's observation of suspicious conduct for the stop to be constitutionally reasonable. *State v. Burgess*, 2001 ME 117, ¶ 8.

12. In this matter, law enforcement's collective knowledge revealed the following: a drug transaction was to occur in Kennebec County. Various law enforcement agents followed a suspected vehicle through the town of China into Waterville. The vehicle stopped in the Burger King parking lot, whereupon the driver of the suspected vehicle got out and briefly interacted with a woman occupant of a Ford Explorer that was registered to the Defendant. Law enforcement had received information that Defendant was dealing drugs. The interaction between the two women was short, and subsequently the first woman drove away. The woman from the Explorer thereupon proceeded to interact briefly with occupants of two other vehicles, then proceed to drive away, never entering Burger King. This was all, based upon the officers' education, training, and experience, consistent with possible drug transactions taking place.

13. Law enforcement also received information that "buy money" would be found inside the Ford Explorer. Accordingly, law enforcement at the time the decision was made to stop the Explorer had both "tip" information plus personal observation of suspicious activity after having received the "tip" information.

14. Based upon the above, it is very difficult for the undersigned **not** to find that the collective knowledge of law enforcement provided law enforcement

with reasonable and articulable suspicion to conduct an investigatory stop of the Ford Explorer. The Motion to Suppress based upon the alleged illegal stop is accordingly **denied.**

**B.    The resulting arrest of the Defendant was illegal because there was insufficient probable cause to arrest Defendant.**

15.    There is no bright line that distinguishes an investigative detention from an arrest. For a detention to qualify as merely investigative, it must be limited in scope and executed through the least restrictive means. *State v. White,* 2013 ME 66, ¶ 13. The undersigned is not going to take the time to discuss whether the Defendant was arrested or not once the vehicle was stopped because it is crystal clear to the undersigned that Defendant **was**, in fact, arrested by law enforcement shortly after the vehicle he was driving was stopped. To argue otherwise would be to engage in legal gymnastics that the undersigned declines to engage in. *See State v. Cunneen, 2019 ME 44,* ¶ 15. The real issue for the Court is whether there was probable cause to arrest the Defendant.

16.    Probable cause to arrest exists when facts and circumstances within the knowledge of the officers and of which they have reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee did commit or was committing a crime. *State v. Parkinson,* 389 A.2d 1, 8 (Me. 1978). Again, although requiring more than mere suspicion, probable cause to arrest can be satisfied on less than the quantum of proof necessary to establish by a fair preponderance of the evidence. *State v. Flint,* 2011 ME 20, ¶ 12.

17.    Based upon the Findings of Fact set forth above, the Court finds there was probable cause to arrest the Defendant, and thus the Motion to Suppress based upon the argument that Defendant was subjected to an illegal arrest is **denied** as well.

Date: 8/14/19

BY _____

Robert E. Mullen, Deputy Chief Justice
Maine Superior Court

the docket    8/15/19

4