STATE OF MAINE                                  UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.                                 DOCKET NO. CR 20-0181


STATE OF MAINE

A True Copy
Attest: [signature]
Clerk of Courts

v.                                              ORDER


MATTHEW LANDRUM


Before the court is Defendant's Motion to Suppress. The court finds that the law enforcement agents' request for identification was not a seizure and that the bag allegedly belonging to Defendant had been abandoned permitting a warrantless search. Therefore, the Defendant's Motion is denied.

## FACTS

The basic facts are not in dispute. Two Special Border Patrol Agents, Crosby and Galkowski, were on duty at the two bus stations in Portland. The Agents were part of a larger "transportation check" that the Border Patrol conducts at bus terminals.

Defendant was a passenger on a Concord bus that stopped at the Concord station. During this stop, the Defendant got off the bus to smoke and stretch his legs. As the passengers returned to the bus, Agents Crosby and Galikowski stood to the side of the bus. The agents were not blocking the returning passengers but were in a position to observe them and ask questions. Consistent with their policies, the agents engaged in casual conversation with the passengers as they returned to the bus.

When Defendant approached the bus, Agent Crosby called out to ask if he knew the Defendant from somewhere. The two engaged in a brief conversation and Defendant was friendly.

REC'D CUMB CLERKS OFF
FEB 5 '21 PM3:07

1

The agents then asked Defendant for identification. The agents did not block the Defendant from entering the bus, nor did they stand in his way. Both agents testified that the Defendant voluntarily provided his identification and his tone was cordial. The agents testified the Defendant was free to refuse and go on his way and that people often refuse requests for identification without consequence. Neither agent informed the Defendant that he was free to get on the bus without providing his identification.

When the agents ran the Defendant's ID, they found he had an active arrest warrant for a failure to appear on a driving offense. At that point, the officers were not going to let the Defendant get on the bus. There is no dispute that the officers had no grounds for a seizure prior to their discovery of the warrant. There is also no dispute that, upon discovery of the warrant, there was probable cause to arrest the Defendant.

After the arrest, Defendant was asked if he owned anything on the bus so that it could be retrieved before the bus left. Defendant indicated that he didn't have anything on the bus. However, Agent Crosby boarded the bus to inquire as to whether the Defendant did in fact have possessions left on the bus. A witness indicated that Defendant had brought a bag onto the bus. Another witness indicated where Defendant had been sitting. Agent Crosby found a bag at that seat and held it up, asking if it belonged to anyone. No one claimed ownership.

When the agent brought the bag off the bus and showed it to Defendant, Defendant denied ownership. However, the Defendant did make a statement of displeasure on seeing the bag. After asking Defendant couple of times whether the property belonged to him, Agent Crosby considered the bag to be abandoned property, searched it, and found cocaine base. Defendant was indicted on trafficking and possession charges.

DISCUSSION

Defendant's motion presents two issues.

1. Did the State seize Defendant in the form of a Terry stop without reasonable articulable suspicion when the agents asked him to provide identification.

2. Was the bag "abandoned" meaning the State could search the bag without a warrant.

## 1. Terry Stop

The issue here is whether a law enforcement officer's request for identification, without more, constitutes a seizure that requires that the officers have a reasonable articulable suspicion of criminal conduct. The parties agree that at the time of the request for identification, there was no reasonable articulable suspicion to seize the Defendant. Therefore, the sole issue here is whether the request for identification was a seizure for the purposes of the Fourth Amendment.

Both federal and state case law establish the following standard for what constitutes a seizure:

> "The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, protects "against unreasonable searches and seizures." U.S. Const. amend. IV. 'An encounter between a police officer and a citizen implicates the Fourth Amendment only if the officer seizes the citizen.' *State v. Moulton*, 1997 ME 228, ¶ 7, 704 A.2d 361. '[N]ot all personal intercourse between policemen and citizens involves seizures of persons.' *Terry* [*v. State of Ohio,*] 392 U.S. 1, 19 n.16 (1968). The Fourth Amendment is not implicated where an officer merely approaches a person on the street or in another public place to ask questions or engage in consensual conversation. *State v. Gulick*, 2000 ME 170, ¶¶ 11, 17 n.7, 759 A.2d 1085; [*State v.*] *Moulton*, 1997 ME 228, ¶ 8, 704 A.2d 361. It is '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen [that a court may] conclude that a seizure has occurred.' *Terry*, 392 U.S. at 19 n.16; *see also United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). The inquiry is objective: a court must look to 'all of the circumstances surrounding the incident' to determine whether 'a reasonable person would have believed that he was not free to leave' the encounter with the police officer. *Mendenhall*, 446 U.S. at 554."

*State v. Ciomei*, 2015 ME 147, ¶ 8, 127 A.3d 548, 551-552.

The court, then, must determine whether the request for identification was a casual contact to a "show of authority." The State cites federal decisions which hold that requesting a Defendant's identification, by itself, is not a seizure. In *INS v. Delgado* for example, INS agents worked their way through a factory asking workers questions. 466 U.S. 210, 212-13 (1984). The agents asked at least one of the respondents for papers who supplied them. *Id.* Citing *Florida* v. *Royer*, 460 U.S. 491, 502 (1983), the Supreme Court held "that interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *Id.* at 216; *see also, United States v. Encarnacion-Galvez*, 964 F.2d 402, 410 (5th Cir. 1992). It is also not necessary that the officers communicate to the Defendant that he is free to decline the request. *United States v. Mendenhall*, 446 U.S. 544, 555-56 (1980). The key issue is whether the officers made any additional show of authority preventing the Defendant from leaving.

The Defendant cited a line of cases from the Law Court that also require review. In *State v. Garland*, the officer's request "for identification, by reason of his authority as an officer of the law, effectively restrained the defendant's resumption of his journey and his driving away; this police action brought into play the protections of the Fourth Amendment against unreasonable seizures as applied to the states by the United States Constitution, Amendment XIV." 482 A.2d 139, 142 (Me. 1984). When the Law Court determined that the officer did not have a reasonable articulable suspicion for the investigatory stop, the Court overturned the conviction based on evidence gained as a result.

The Defendant argues that the holding in *Garland* means that state law is more restrictive when considering whether a request for identification and points to the case law citing *Garland*

4

for support. In *State v. Doucette*, a request for the identification did not impede the Defendant from continuing on his way because the defendant's van had run out of gas. 507 A.2d 590, 591 (Me. 1986). Therefore, the request for defendant's identification did not constitute a "seizure." Then, in *State v. Moulton*, the Court determined that a seizure could not have occurred until the officer requested that the defendant produce her license and registration. 1997 ME 228, ¶ 9, 704 A.2d 361. In *State v. Brewer*, the decision did not bear on a request for identification. Citing *Moulton* and *Garland*, however, the Court identified that an officer's request to "an individual for identification, including a license and registration" is an "example" of an action "that lead[s] a reasonable person to believe that he is not free to leave." 1999 ME 58, ¶12, 727 A.2d 352.

Finally, in *State v. Ciomei*, the Court addressed a case where a game warden approached a Defendant and asked him "what was going on." 2015 ME 147, ¶ 9, 127 A.3d 548, 552. The Court found no seizure because there was no evidence that the warden "made any request of, or issued any order to," the defendant. The Court distinguished *Garland*, "because, in that case, the officer effected a seizure by asking the driver for his identification, whereas in the present case, the warden merely announced his presence to" the defendant. *Ciomei*, 2015 ME 147, ¶ 9, n. 7., 127 A.3d 548.

*Garland* and some of the post *Garland* cases use language that suggests a request for identification is a seizure. On the other hand, Law Court decisions also support an argument that the court should follow the federal precedent and consider all of the factors rather than stop the analysis at whether the officer requested written identification. The Law Court has specifically cited *United States v. Encarnacion-Galvez* for the proposition that there is no seizure when agents asked for identification. *Brewer,* 1999 ME 58, ¶ 11, 727 A.2d 352. The Law Court has also considered an officer's tone of voice when distinguishing between "a polite request or a command" when determining whether an officer's communication is an order and a seizure. *State v.*

5

*Patterson*, 2005 ME 26, ¶ 13, 868 A.2d 188. (addressing whether requesting someone to roll their window down is a seizure). The Law Court also has also cited *United States v. Mendenhall* with approval for the proposition that the court must consider whether a request for identification constituted a *demand* or a *request.* *State v. Collier*, 2013 ME 44, ¶11, 66 A.3d 563; citing *Mendenhall*, 446 U.S. at 554-55. The Court has also listed several factors that a court should consider when determining whether a seizure has occurred. *Ciomei*, 2015 ME 147, ¶ 8, n.5, 127 A.3d 548.

Regardless of the sometimes-mandatory language in *Garland* and the cases citing it, the court believes that the Law Court expects the court to apply all of the factors outlined by *Ciomei* when determining a seizure has occurred. Based on the testimony, the court is convinced that the agents' request was a polite request and not an order. The officers testified that the conversation was friendly and their tone was not consistent with a demand. The court has no evidence to suggest that had the Defendant declined to produce his identification, he would not have been permitted to proceed on the bus. The agents testified that refusals happen all the time. The agents did not block the route to the bus but stood to the side. The agents were not required to tell the Defendant that he is free to go at the time they asked for identification. The only factor that suggests the Defendant would not feel to go was that the officers were uniformed and armed. That alone is not enough to turn a request for identification into a seizure.

Given these facts, the court cannot find that the agents made a mere request for the identification. A mere request does not constitute an order. With a mere request, Defendant was free to go. Therefore, the court is persuaded the state has met its burden to show that the agent's request for identification was not a seizure. If there was evidence that the request for an ID was

6

expressed as an order, the result would be different. However, because the request for the license was not a seizure, the Motion to Suppress based on the stop is denied.[1]

2. **Search of the Bag.**

This issue is easier to resolve. An exception to the requirement that the State obtain a warrant to search a bag is found when the search is incident to an arrest. The Defendant argues that the search of the bag was outside the scope of a search incident to an arrest. The court agrees that the bag was not within the Defendant's reach and it bore no relation to the warrant on which Defendant was retained. The exception to the requirement for a warrant for search incident to arrest does not apply here. *State v. Pagnani*, 2018 ME 129, ¶¶ 20-22, 193 A.3d 823.

The State, however, does not rely on the search incident to arrest exception for their warrantless search of the bag. Instead, the State takes the position that a warrant was not required because Defendant had abandoned the property. "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts." *State v. Philbrick*, 436 A.2d 844, 854 (Me. 1981). The typical abandonment case is one where the defendant purposefully discards weapons or contraband in order to discard or disassociate himself from it while the police are approaching. *Id.* at 855.

This case is a clear case of abandonment. The states' witnesses testified unequivocally that Defendant repeated on several occasions that he did not own the property. The case is distinguishable from *State v. May*, 608 A.2d 772, 775-76 (Me. 1992) in which the defendant had merely shrugged when asked about why his wallet was missing. *Compare, id.* at 776; citing *United*

---

[1] The court notes that the State could have argued that "the discovery of a valid arrest warrant was a sufficient intervening event to break the causal chain between the unlawful stop and the discovery of drug-related evidence." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016)(holding that discovery of the warrant attenuated the illegal stop). Because the court concludes the stop was legal, the court does not reach this issue.

*States v. Lee*, 916 F.2d 814 (2nd Cir. 1990) (defendant's repeated denials when asked whether he owned checked suitcase amounted to abandonment); with *United States v. Lewis*, 287 App. D.C. 306, 921 F.2d 1294 (D.C. Cir. 1990)(bus passenger's voluntary denial of ownership of bag in overhead rack constituted abandonment); *United States v. Lucci*, 758 F.2d 153 (6th Cir. 1985). As such, the court finds the state met its burden to show that Defendant had disassociated himself from the bag and had disclaimed ownership of the bag. Therefore, the property was abandoned.

The Defendant's Motion to Suppress is DENIED.

DATE: *Feb 4, 2021*

_____
Thomas R. McKeon
Justice, Maine Superior Court

8

MUFISC # 168.21

CRIMINAL DOCKET    2/4/21
CUMBERLAND, ss.
Docket No    CUMCD-CR-2020-00181

DOCKET RECORD

A True Copy

Attest: [signature]

Clerk of Courts

DOB: 06/12/1974
Attorney:    VERNE PARADIE
             PARADIE & RABASCO PA
             217 MAIN ST SUITE 400
             LEWISTON ME 04240
             APPOINTED 11/09/2020

State's Attorney:    JONATHAN SAHRBECK

Filing Document:    CRIMINAL COMPLAINT
Filing Date:        01/10/2020

Major Case Type:  FELONY (CLASS A,B,C)

**Charge(s)**

1  AGGRAVATED TRAFFICKING OF SCHEDULED DRUGS          01/09/2020    PORTLAND
Seq 11550          17-A  1105-A(1)(B)(1)       Class A

2  UNLAWFUL TRAFFICKING IN SCHEDULED DRUGS            01/09/2020    PORTLAND
Seq 8541           17-A  1103(1-A)(A)         Class B    Charged with INDICTMENT on Supplemental Filing.

3  UNLAWFUL POSSESSION OF SCHEDULED DRUG              01/09/2020    PORTLAND
Seq 13149          17-A  1107-A(1)(A)(2)      Class B    Charged with INDICTMENT on Supplemental Filing.

4  UNLAWFUL POSSESSION OF COCAINE BASE                01/09/2020    PORTLAND
Seq 13376          17-A  1107-A(1)(B)(3)      Class C    Charged with INDICTMENT on Supplemental Filing.

**Docket Events:**

01/10/2020  FILING DOCUMENT - CRIMINAL COMPLAINT FILED ON 01/10/2020

01/10/2020  Charge(s):  1
            HEARING - INITIAL APPEARANCE SCHEDULE OTHER COURT ON 01/10/2020 at 01:00 p.m. in Room No. 1

            PORSC
01/10/2020  Charge(s):  1
            HEARING - INITIAL APPEARANCE HELD ON 01/10/2020
            THOMAS E DELAHANTY II, JUSTICE
            DA:  CARLOS DIAZ
            Defendant Present in Court
            FTR1
01/10/2020  Charge(s):  1
            PLEA - NO ANSWER ENTERED BY DEFENDANT ON 01/10/2020

01/10/2020  BAIL BOND - $1,000.00 CASH BAIL BOND SET BY COURT ON 01/10/2020
            THOMAS E DELAHANTY II, JUSTICE
            OR 2500.00SS OR PR AND MPTSC AND PR
01/10/2020  MOTION - MOTION FOR APPOINTMENT OF CNSL MADE ORALLY BY DEF ON 01/10/2020

01/10/2020  MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 01/10/2020
            THOMAS E DELAHANTY II, JUSTICE
            COPY TO PARTIES/COUNSEL
01/10/2020  Party(s):    MATTHEW LANDRUM
            ATTORNEY - APPOINTED ORDERED ON 01/10/2020

            Attorney: NICOLE GRAY
01/10/2020  HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 04/22/2020 in Room No. 7

CR-200                               Page 1 of 4                        Printed on: 02/05/202